Leo BAZILE, Plaintiff-Appellant,

v.

BISSO MARINE CO., INC. Defendant,

Bisso Towboat Co., Defendant-Appellee.

No. 77-1015.

United States Court of Appeals,
Fifth Circuit

Nov. 8, 1979.

---

Darryl J. Tschirn, Covington, La., Robert B. Keaty, New Orleans, La., for plaintiff-appellant.

William B. Gibbens, III, George W. Healy, III, Winston Edward Rice, New Orleans, La., for defendant-appellee.

Before WISDOM, GOLDBERG and FAY, Circuit Judges.

FAY, Circuit Judge:

This case was brought in the United States District Court for the Eastern District of Louisiana by Leo Bazile against Bisso Towboat Company alleging that he was a member of the crew of the various vessels owned by Bisso and that he was injured due to the negligence of Bisso and was therefore entitled to $900,000 in damages. The jury found that plaintiff was a seaman and that he was entitled to $250,000 in damages from Bisso Towboat Company. The trial judge granted a judgment notwithstanding the verdict and, in the alternative, granted a motion for a new trial. Although we recognize this is an unusual case we believe the different standards of review for a judgment notwithstanding a verdict and granting a new trial require us to reverse the judgment notwithstanding the verdict and affirm the granting of a new trial.

## I. *FACTS*

The defendant, Bisso Towboard Co., operates six vessels and hired plaintiff, Leo Bazile in 1970. Plaintiff's testimony was that throughout his employment and until his injury he performed various tasks for Bisso Towboat as a deck hand. He further testified that he spent from 80–90 percent of his working time on board the Bisso fleet, that he ran errands for Bisso and that he performed whatever tasks Captain Slatten asked him to perform. He testified that he went on board the Sally R (one of the vessels): "I just went down—go up the river with it or go down the river with it; one thing or another. Not to spend no significant amount of time." T. at 103. He stated that he thought he had been a deck hand on the Independent, another of Bisso's tug boats, which Bazile says may have sunk in 1972 or 1973. He said he was a deck hand on the tug boat, Cecilia: "I was a deck hand at the time. I was a deck hand for the Bisso Boat Company for me to go out and bring stores or do anything they said. If they didn't show up I would have to do whatever Captain Slatten say to do and I have to do it." T. at 105. He stated that he helped run the Cappy and was a standby on that vessel. He also stated that he worked on the Bisso to "build up steam" and in answer to a question "Did you go on it [the Bisso] when it left the dock?" he said "It moved out in the river and up from one end of the dock to another; shifting from one place to the other." T. at 107. He further testified that he "moved away from the dock" with the Billy Bisso. Bazile's testimony was that he was not assigned to one particular boat but that he did go away from the dock numerous times at night on various vessels belonging to his employer. He stated that he performed various duties: "For example, like I say, I take inventories, I went on to take lines onto them to bring guys on them, and help guys with lines, and on occasions we would take guys off of the boat." T. at 157. He explained that during the course of his duties he sometimes had to "get on one boat to get over to the next one" and that the boats were not all at the dock. T. at 157. He said he rode on the boats up or down the river and that he was there "to help them with whatever they had to do." T. at 158–159. He testified that he helped paint the Billy Bisso and that he sometimes carried cables onto the vessels. Although it appears he was provided with a car and he often took the car home after work, he stated that other deck hands employed by Bisso Towboat also used the company car to get sandwiches.

The payroll journal of the Bisso Towboard Company covering the period from the beginning of plaintiff's employment with Bisso until his accident, which listed the crew members of each vessel, indicated that plaintiff was employed and paid as an office worker. Aside from Captain Slatten, the defendant called nine witnesses on the status issue, including the dispatcher for Bisso, the Bisso record keeper, and several other employees of Bisso who had worked closely with the plaintiff. All testified that he was essentially an errand runner, that he had never worked as a deck hand and that he was only on board the vessels occasionally and only incidental to his work as a runner. Plaintiff's compensation was $600 a month.

Plaintiff testified that on the day of his alleged accident he had been taking inventory of groceries aboard some of the tug boats. While carrying a box of canned goods away from a vessel on the dock, the plaintiff testified that the Sally R pulled up to the dock and knocked against it, causing the dock to move up and down and that, as a result, plaintiff lost his balance and fell. An invoice introduced by defendant showed that on the day of the accident the Sally R was not in New Orleans, where the injury to plaintiff occurred, but was in Boothville.

The jury returned a verdict for the plaintiff, finding that he was a seaman under the Jones Act, that the defendant's negligence was the sole cause of the injury, and that the plaintiff was entitled to recover $250,000 in damages from defendant. After the jury was dismissed the defendant moved for a judgment notwithstanding the verdict and alternatively for a new trial. The motion for judgment notwithstanding

the verdict was granted based on the lack of plaintiff's credibility as a matter of law and also on the finding that, taking plaintiff's testimony as correct, except where inconsistent, plaintiff did not present sufficient evidence to support the determination of seaman's status made by the jury. The motion for new trial was taken under submission and was later granted conditioned on the reversal of the judgment notwithstanding the verdict.

## II. *SCOPE OF REVIEW*

■ It is clear that where a party seeks a judgment notwithstanding the verdict or, in the alternative, a new trial, if the trial court grants the judgment notwithstanding the verdict and grants the new trial in the alternative, the judgment notwithstanding the verdict is final and the court of appeals can review both rulings. See, Fed.R.Civ.P. 50(c)(1).

> This departure from the normal rule that a motion granting a new trial is interlocutory and non-appealable is justified by the obvious fact that the principal judgment is clearly final; the new trial grant will never be effective unless the judgment is overthrown. Since the principal judgment is appealable, it would be wasteful to hold that the Court of Appeals cannot review all that happened below in the event that it holds the grant of judgment notwithstanding the verdict to have been erroneous.

9 Moore's Federal Practice § 110.08[3], at 122 (2d. ed. 1948). Thus, we have jurisdiction to consider both the judgment notwithstanding the verdict and the new trial.

## A. Judgment Notwithstanding the Verdict

■ The standard for granting a motion for a judgment notwithstanding the verdict requires that the trial court review all the evidence in the light most favorable to the opponent of the motion and if the trial court still finds that the facts and inferences point so strongly and over-whelmingly in favor of one party that reasonable men could not arrive at a contrary verdict, the motion for a judgment notwithstanding the verdict should be granted. *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir. 1969). It is also true that under *Lavender v. Kurn*, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1945) the trial judge in a Jones Act case is bound by a stricter rule—only when there is a complete absence of probative facts supporting the verdict can he grant a motion for a judgment notwithstanding the verdict. 327 U.S. at 653, 66 S.Ct. 740.

■ We find that even applying the less strict standard of *Shipman* the granting of the motion for a judgment notwithstanding the verdict was improper. There was sufficient testimony from the plaintiff to support a verdict that he was a seaman. He testified that he was assigned to all the tug boats and that he often brought supplies to all of them, helped with the lines, helped paint a tug boat and would perform whatever tasks Captain Slatten requested him to perform on any of the vessels. Furthermore, his testimony revealed that at times when a tug boat was away from the dock area Bazile would be on board performing whatever tasks were necessary and requested of him. We do not believe that *Offshore Co. v. Robison*, 266 F.2d 769 (5th Cir. 1959) restricts a seaman to a person assigned only to one vessel.[1] Rather, a person can be a seaman assigned to a fleet of vessels and the question is sufficient to go to the jury as long as he was assigned permanently to these vessels or performed a substantial part of his work on these vessels and if the capacity in which he was employed or the duties which he performed contributed to the function of these vessels, or to the accomplishment of its mission, or to the operation or welfare of these vessels in terms of maintenance during its movement or during anchorage for its future trips. 266 F.2d at 779. Bazile's duties on the vessels contributed to the operation and

---

1. The jury instructions given by the trial judge on what is necessary in order to find that someone is a seaman were clearly adequate.

maintenance—he painted, helped bring supplies to them, helped with the lines, helped dock the tugs, and performed whatever duties were necessary for its maintenance and operation as he was told. Plaintiff's testimony was that he worked on the vessels 80–90 percent of the time. He further testified that on the day of the accident he had been taking inventory of groceries aboard some of the vessels. While carrying a box of canned goods away from a vessel on the dock, plaintiff testified that the Sally R pulled up to the dock and knocked against it, causing the dock to move up and down and as a result plaintiff lost his balance and fell. Although his testimony was contradicted by an exhibit produced by defendant which indicated that the Sally R may not have been in New Orleans on the day of the accident, the jury could certainly have believed plaintiff instead of relying on the invoice produced by defendant which was prepared seven days after the office got a report from the tug boat relating where it had been. The jury could have believed plaintiff instead of defendant's witnesses and the number of defense witnesses is certainly irrelevant as to what could or could not be believed. There was sufficient testimony from which the jury could have found that plaintiff was a seaman, that defendant's negligence was the sole cause of the injury and that the plaintiff was entitled to recover $250,000.

B. New Trial.

As far as the motion for a new trial, the trial judge can grant a new trial if he believes the verdict is contrary to the weight of the evidence. See, e. g., *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147 (1940); *Marsh v. Illinois Central Rail Co.*, 175 F.2d 498 (5th Cir. 1949). Although a trial judge cannot weigh the evidence when confronted with a motion notwithstanding the verdict, in a motion for a new trial the judge is free to weigh the evidence. As an appellate court, our review of the granting of the motion for a new trial is severely limited—the lower court's action is discretionary and we may interfere only when the court abuses its discretion or fails to exercise it. *Hampton v. Magnolia Towing Co.*, 338 F.2d 303, 306–307 (5th Cir. 1964). After careful consideration of the record we are not prepared to hold that the trial judge abused his discretion in granting the motion for a new trial. The only witness who supported plaintiff's story was the plaintiff.[2] Because in a motion for a new trial he may weigh the evidence, the trial judge could have placed great weight on the witnesses presented by defendant who testified that Bazile was not a member of the crew and did not perform duties of a seaman and little or no weight upon Bazile's testimony. The trial judge could have determined that the manifest weight of the evidence indicated that Bazile's job was that of an office worker and not a seaman.

### III. CONCLUSION

Because we are presented with different standards of review, we find that it was error on the part of the trial judge to grant the motion notwithstanding the verdict but find that it was within his discretion to grant the motion for a new trial. Accordingly, we REVERSE the judgment notwithstanding the verdict and AFFIRM the granting of the new trial.

---

2. At trial Captain Slatten testified that in 1970 he executed a United States Public Health Master's Certificate which classified Leo Bazile as a deck hand/wiper on a vessel in the Bisso fleet but that he falsified the certificate in order to help Bazile obtain hospital care. Captain Slatten said that at the time he executed the certificate Bazile was not a seaman.