**Clayton M. WATTS, Plaintiff–Appellant,**

v.

**GREAT ATLANTIC AND PACIFIC TEA COMPANY, INC.,
Defendant–Appellee.**

No. 87–8441.

United States Court of Appeals,
Eleventh Circuit.

April 15, 1988.

Randolph A. Mayer, Michael T. Nations, Atlanta, Ga., for plaintiff-appellant.

Thomas E. Magill, Carter & Ansley, Atlanta, Ga., for defendant-appellee.

Before FAY and CLARK, Circuit Judges, and GONZALEZ\*, District Judge.

\* Honorable Jose A. Gonzalez, Jr., U.S. District Judge for the Southern District of Florida, sitting by designation.

PER CURIAM:

On June 7, 1984, Clayton Watts was struck by an electric pallet jack driven by Harold Glenn in the Richmond, Virginia warehouse of The Great Atlantic & Pacific Tea Company (A & P). Watts was an independent truck owner-operator who delivered paper goods to the A & P warehouse on the day of his injury. Having tendered his shipping documents inside the warehouse, Watts walked down the main aisle of the building towards the exit. On each side of the main aisle were stacks of pallets containing A & P inventory. There was no designated pedestrian walkway in the warehouse, and Watts walked along the very edge of the aisle to avoid pallet jacks and forklifts that were using the aisle. Although the Richmond A & P warehouse had a design similar to many others that Watts had seen before, the pallets on the dock side of the Richmond warehouse were stacked over six feet high. Watts could not see over the stacks, which were taller than he was.

The stacks of pallets were separated by narrow side aisles through which A & P's employees could drive pallet jacks, or worksavers, to lift pallets and transport them around the warehouse and into trucks. The pallet jacks operate at about two miles per hour. Because of the potential for confusion, the drivers of A & P's pallet jacks do not use horns even when they operate in the side aisles and approach the center aisle.

As Watts was walking towards the exit, Harold Glenn was maneuvering a pallet jack in one of the narrow side aisles to lift a pallet of paper goods. Just as Watts walked past the intersection of the center aisle and a side aisle, Glenn's pallet jack struck him in the leg. Neither Watts nor Glenn had looked around the stack of pallets to see if anyone was coming. Watts testified at trial that Glenn said, "I'm sorry, I didn't see you." Glenn testified, however, that Watts said that the accident was his own fault.

Watts visited a Dr. Cox the following morning, complaining of a swollen left leg and an abrasion on the right leg. Thereafter he was treated by Dr. Carolyn Crump, Dr. Cox's partner, for injuries to the left leg. Dr. Crump diagnosed possible traumatic arthritis. Although X-rays taken of the left leg were normal, Dr. Crump referred Watts to a general surgeon to have his left leg drained.

In March 1985, Watts slipped on some ice and injured his right leg on the license plate of his truck. Six weeks later, after the right leg had become infected, Watts again visited Dr. Crump. In early 1986 Dr. Crump referred Watts to an orthopedic surgeon, Dr. R.V. Nair. Dr. Nair placed Watts in the hospital for testing and treatment of his back and legs. Before all the tests could be completed, Watts began to suffer severe chest pains; he subsequently suffered a heart attack and underwent bypass surgery.

Dr. Nair testified at a deposition that Watts has degenerative arthritis and, probably, a herniated disc. He gave the opinion that Watts was disabled, and that the prognosis for Watts was poor. When asked by hypothetical question whether he would consider Watts permanently disabled even if Watts did not have heart problems,[1] Dr. Nair replied that Watts would be disabled from long-distance trucking. On cross-examination by A & P's attorney, Dr. Nair admitted that it was a matter of speculation as to whether the injury from the pallet jack or the slip on the ice had caused Watts' herniated disk, but on redirect examination he stated that, if Watts had not noticed any significant difference in the symptoms before and after the slip on the ice, he could give the opinion that the herniated disk was causally related to the injury from the pallet jack. Dr. Nair's deposition testimony was read to the jury at trial.

At trial, A & P defended on the grounds that its employees had not been negligent and that Watts had been guilty of contributory negligence by not looking around the stacks of pallets to see if a pallet jack was operating close to the center aisle or preparing to enter the aisle. Under Virginia law, which governs this action, contributory negligence completely bars an action based on negligence, *see Jones v. Meat Packers Equipment Co.*, 723 F.2d 370, 373 (4th Cir.1983), but such contributory negligence must be more than "merely trivial." *Cooke v. Griggs*, 183 Va. 851, 33 S.E.2d 764, 766 (1945); *see Lerwill v. Regent Van & Storage, Inc.*, 217 Va. 490, 229 S.E.2d 880, 884 (1976). The jury returned a verdict against A & P for $124,709.00. A & P moved in the district court for judgment notwithstanding the verdict (judgment n.o.v.) or for a new trial. The district court granted judgment n.o.v. for A & P, finding that Watts was guilty of contributory negligence as a matter of law. In the alternative, the district court found that the jury verdict was against the great weight of the evidence and conditionally granted A & P's motion for a new trial if the court of appeals should reverse the grant of judgment n.o.v. Watts has appealed. We reverse both the grant of judgment n.o.v. and the grant of a new trial.

■ The standard governing the grant of judgment n.o.v. is well established:

On motions for directed verdict and for judgment notwithstanding the verdict, the Court should consider all the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judg-

---

**1.** Watts did not sue A & P for the cost of medical expenses related to his heart disease.

ment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question. However, it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

*Boeing Co. v. Shipman*, 411 F.2d 365, 374–75 (5th Cir.1969) (en banc) (footnote omitted).[2] Applying this standard, we conclude that the district court should not have granted judgment n.o.v. Reasonable persons could have differed on the subject of Watts' contributory negligence, particularly as to whether any negligence in failing to look around the pallets to see if pallet jacks were operating was too slight to bar Watts' action entirely. "Contributory negligence as a defense must be more than merely trivial; it must be a contributing cause of the accident." *Cooke v. Griggs*, 33 S.E.2d at 766.[3]

Moreover, A & P was an occupier of land, and Watts was its invitee. Although, under Virginia law, an occupier of land need give its invitees no notice or warning of open and obvious dangerous conditions, *Tazewell Supply Co. v. Turner*, 213 Va. 93, 189 S.E.2d 347, 349 (1972), "without knowledge or warning of danger, an invitee may assume that the premises are reasonably safe for his visit. *He is not required to be on the lookout for dangers not open and obvious,* but notice is not required where the dangerous conditions is open and obvious to a person who is exercising reasonable care for his own safety." *Id.* (emphasis added).[4] Reasonable persons could

have differed as to whether conditions in the A & P warehouse, including the tall stacks of pallets and the possibility of a pallet jack striking a pedestrian, constituted a danger "open and obvious."

The facts of this case distinguish it from both *Tazewell* and *Sayre v. Shields*, 209 Va. 409, 164 S.E.2d 665 (1968), in which the Virginia courts ruled that the defendants were entitled to verdicts as a matter of law because of the plaintiffs' contributory negligence. In *Tazewell*, the plaintiff tripped over a box sitting in the *middle of an aisle* of a well-lit department store; the danger was open and obvious to any reasonable shopper. *Sayre* involved a collision between two automobiles in an intersection. Such a case, of course, does not involve the particular duty of care owed by occupiers of land to their invitees. Furthermore, the Virginia Supreme Court noted that "[w]e have said many times that a motorist approaching an intersection is under a duty to see another vehicle *which is in plain view*." 164 S.E.2d at 666 (emphasis added). Neither *Tazewell* nor *Sayre* requires us to affirm the district court's grant of judgment n.o.v.

■■■■ The standard for the grant of a new trial by the district court, and for our review thereof, is more difficult to summarize than the standard for the grant of judgment n.o.v. A trial judge may grant a motion for a new trial if he believes the verdict rendered by the jury to be contrary to the great weight of the evidence. *Williams v. City of Valdosta*, 689 F.2d 964, 972 (11th Cir.1982). In ruling on a motion for new trial, the trial judge is permitted to weigh the evidence,[5] but to grant the motion he must find the verdict contrary to the great, not merely the greater, weight of the evidence. *Id.* Generally

---

**2.** The Eleventh Circuit, in the in banc decision *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**3.** The district judge instructed the jury that A & P would have to prove that Watts' "negligence was a substantial contributing factor to his injury" to prevail on the defense of contributory negligence.

**4.** The district judge instructed the jury on the duty of occupiers of land towards invitees.

**5.** The trial judge is clearly *not* permitted to weigh the evidence in ruling on a motion for judgment n.o.v. *See Rabun v. Kimberly-Clark Corp.*, 678 F.2d 1053, 1057 (11th Cir.1982).

speaking, we may reverse a district court's disposition of a motion for new trial only for abuse of discretion, *id.* at 974, but it is clear that our review should be rigorous if the motion is granted rather than denied, *id.*, and if the basis for the motion was, as here, the weight of the evidence. *Id.* Moreover, our review is rigorous where the trial involved simple issues and highly disputed facts, and where the trial lacked "pernicious occurrences" such as prejudicial comments by counsel or introduction of possibly inflammatory evidence. *Id.*[6]

■ With these principles in mind, we conclude that the trial judge should not have granted the motion for a new trial, for the verdict was not against the great weight of the evidence. As we explained above, the jury was entitled to decide whether the layout of the warehouse put Watts on notice of open and obvious dangers, and whether Watts should have looked around each stack of pallets before proceeding further. Although the testimony at trial established that Watts did not see Glenn before the accident, the great weight of the evidence did not establish that Watts *should have* seen him. Watts testified, for example, that he had to walk along the edge of the center aisle because he was worried about the traffic in the center aisle. The layout of the warehouse may have placed Watts in a situation where, unbeknownst to him, he could have been struck by worksavers operating either in the center aisle or in the side aisles.

Furthermore, Watts flatly disputed the testimony of Glenn and of James McCray, the warehouse supervisor, that he admitted fault for the accident. Dr. Nair's deposition testimony established a link between the warehouse accident and Watts' arthritis and herniated disc, although that link was disputed by A & P. This trial, then, was one with simple issues, disputed facts, and an absence of pernicious occurrences, *see Williams*, 689 F.2d at 974, and the testimony introduced by the plaintiff is sufficient to convince us that the jury verdict was not against the "great weight" of the evidence.

Accordingly, the order of the district court granting judgment notwithstanding the verdict and conditionally granting the motion for a new trial is REVERSED, and the case is REMANDED with instructions to reinstate the jury verdict.

---

**6.** As this court explained in *Williams*, 689 F.2d at 974 n. 8:

This is not to say that in cases such as this we apply a standard other than abuse of discretion. Rather, when the trial judge dismisses a jury verdict solely because in his view the evidence was insufficient, it is *more likely* that he has abused his discretion: fact-finding is the province of the jury, and there is no doubt that all evidence was properly before the jury and that the proceedings were decorous. On the other hand, when such a motion is granted on the basis of legal error or prejudicial conduct, the trial judge is not ruling that the jury was incorrect in its assessment of the case as presented. Rather, his decision amounts to finding that due to errors occurring at trial *no* verdict could have been arrived at properly. In such a case it is entirely proper that the trial court be allowed to correct its own errors; in doing so the court is actually *safeguarding* the role of the jury by ensuring that to the greatest extent possible the trial process will succeed in revealing to the jury those facts that are necessary to arrive at a verdict.