Donald L. AMES, M.D., Plaintiff,

v.

**PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY,**
**Defendant.**

No. 93–14010–CIV.

United States District Court,
S.D. Florida.

Aug. 26, 1994.

George H. Moss, Moss, Henderson, Van Gaasbeck, Blanton & Korval, Vero Beach, FL, Marjorie G. Graham, Palm Beach Gardens, FL, for Plaintiff Ames.

John E. Meagher, Shutts & Bowen, Miami, FL, for Defendant.

## ORDER

RYSKAMP, District Judge.

THIS CAUSE came before the court upon Plaintiff's Renewed Motion for Directed Verdict (J.N.O.V.) (Docket Entry "DE" 66), Plaintiff's Alternative Motion for New Trial (DE 67), and Defendant's Motion to Set Attorney's Fees and Costs (DE 75).

## I. BACKGROUND

In September of 1987, Dr. Ames, a board-certified orthopaedic surgeon, purchased a disability income policy from Provident Life & Accident Insurance Company. The policy provided separate income protection plans against the eventualities of total and residual disability. The total disability provision is at the heart of Dr. Ames's complaint, and reads as follows:

> Total Disability or totally disabled means that due to Injuries or Sickness:
>
> 1. you are not able to perform the substantial and material duties of your occupation; and
>
> 2. you are receiving care by a Physician which is appropriate for the condition causing the disability.

(Complaint, Exhibit A).

In April of 1988, Dr. Ames began to suffer from rheumatoid arthritis in his hands, and sought medical treatment for his condition. The ailment became progressively worse, to the point that Dr. Ames was unable to perform surgeries because of the pain and weakness in his hands. Dr. Ames, however, did continue to earn income through the practice of medicine. The exact nature of that practice and its relevance to the terms of the insurance policy were contested at trial.

On April 2, 1990, Dr. Ames executed a Statement of Claim for total disability. Provident refused to grant total disability benefits, claiming that because Dr. Ames was continuing to earn income in his insured specialty, he was only entitled to residual benefits. Thereafter, Provident paid Dr. Ames for those months in which his income was sufficiently low to entitle him to residual benefits under the terms of the policy. Dr. Ames continued to request total disability benefits, and filed the instant lawsuit for breach of contract on November 18, 1992.

On May 25, 1993, Provident filed an Amended Answer to Complaint. The Amended Answer contained Counterclaims for unjust enrichment, common law fraud, negligent misrepresentation, civil theft, and breach of contract. Provident alleged that Dr. Ames submitted false billing information for April through December of 1992, by reporting total billings in an amount that was 30% less than actually billed. According to Provident, these lower billing figures were incorrect and caused Provident to pay Dr. Ames residual disability benefits although he was not entitled to them. Dr. Ames claims that he reduced the monthly billing statements by 30% in order to accurately state his income, because he generally is unable to collect 30% of his billings.

The case proceeded to trial on November 3, 1993. After three days of testimony regarding the total disability and reduced billing figure issues, the case went to the jury on the Counts for breach of contract, unjust enrichment, and civil theft. The parties agreed at sidebar that damages would be a simple mathematical calculation that need not be submitted to the jury. (Trial Transcript at 296). The jury found that Dr. Ames was not totally disabled, that he was unjustly enriched, and that he had committed civil theft.

On November 23, 1993, the Court entered Final Judgment, awarding Provident attor-

ney's fees and costs. Subsequently, Dr. Ames filed a Renewed Motion for Directed Verdict and an Alternative Motion for New Trial. Provident has filed a Motion to Set Attorney Fees and Costs.

## II. JNOV AND NEW TRIAL STANDARDS

Federal Rule of Civil Procedure 50(a) provides that judgments as a matter of law are appropriate when "there is no legally sufficient evidentiary basis for a reasonable jury to have found for [a] party with respect to [an] issue." Motions for JNOV "need not be reserved for situations where there is a complete absence of facts to support a jury verdict," but are appropriate when there is no "substantial conflict in evidence to support a jury question." *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989). The standard for JNOV is well established in the Eleventh Circuit:

> On motions for directed verdict and for judgment notwithstanding the verdict, the Court should consider all the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury.

*Watts v. Great Atlantic and Pacific Tea Co.*, 842 F.2d 307 (11th Cir.1988) (*citing Boeing Co. v. Shipman*, 411 F.2d 365, 374–375 (5th Cir.1969)). A trial judge is not permitted to weigh the evidence in considering a motion for JNOV. *Id.* at 310; *see also Rabun v. Kimberly–Clark Corp.*, 678 F.2d 1053, 1057 (11th Cir.1982).

Unlike motions for JNOV, "motions for a new trial are committed to the discretion of the district court." *McDonough Pow-*

*er Equipment v. Greenwood*, 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984); *Hessen v. Jaguar Cars*, 915 F.2d 641, 644 (11th Cir.1990). A new trial should be granted when "the verdict is against the clear weight of the evidence ... or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." *Hewitt v. B.F. Goodrich Co.*, 732 F.2d 1554, 1556 (11th Cir.1984) (citations omitted). "In ruling on a motion for new trial, the trial judge is permitted to weigh the evidence, but to grant the motion he must find the verdict contrary to the great, not merely the great weight of the evidence." *Watts v. Great Atlantic and Pacific Tea Co.*, 842 F.2d at 310; *see also Williams v. City of Valdosta*, 689 F.2d 964, 972 (11th Cir.1982).

## III. TOTAL DISABILITY

Dr. Ames moves for JNOV, or alternatively for new trial, on the issue of total disability, which is the focus of his breach of contract cause of action. The determination of whether Dr. Ames should receive full disability benefits, or merely residual benefits from Provident hinges on the factual issue of whether or not Dr. Ames became totally disabled as a result of his rheumatoid arthritis. At trial, the jury found that Dr. Ames was not totally disabled.

In moving for JNOV, Dr. Ames cites *Lorber v. Aetna Life Ins. Co.*, 207 So.2d 305, 309 (Fla. 3rd DCA), *cert. denied*, 212 So.2d 876 (Fla.1968) and *Grauer v. Occidental Life Ins. Co.*, 363 So.2d 583 (Fla. 1st DCA 1978) for the proposition that " '[t]otal disability' ... exists when the person seeking disability is not able to perform *all* the substantial and material acts necessary to his usual occupation, in the customary and usual manner." (Renewed Motion for Directed Verdict at 1). Dr. Ames asserts that because he is no longer able to perform surgeries, a substantial and material act necessary to his usual occupation, the Court should find him totally disabled as a matter of law.

Although dicta from *Lorber* and *Grauer* could be understood to direct a conclusion of law as to total disability, a survey of those and other cases reveals otherwise. In *Lor-*

*ber*, the relevant policy language defined total disability as the condition of being unable "to perform every duty pertaining to [the insured's] occupation." *Lorber v. Aetna Life Ins. Co.*, 207 So.2d at 308. By contrast, Dr. Ames's policy defines total disability as being unable "to perform the substantial and material duties of your occupation." (Complaint, Exhibit A). The word "every" in the *Lorber* disability policy may have influenced the court's finding with respect to the meaning of total disability in that case. The Court does not read *Lorber* to hold that all total disability policies, whatever the nuances of their terms, entitle policyholders to full benefits when illness or injury affect their customary manner of working.

Similarly, in *Grauer*, the court was interpreting a policy that defined totally disabled as being "unable to perform each and every duty pertaining to his occupation...." *Grauer*, 363 So.2d at 585. The *Grauer* court reasoned that "[c]lauses which so define total disability do not mean absolute helplessness, but contemplate a disability to perform all substantial and material acts necessary to one's usual occupation in the customary and usual manner." In *Grauer*, like *Lorber*, the court was interpreting the specific language of the policy before it. Those cases do not mandate a finding that Dr. Ames was totally disabled as a matter of law.

As the court in *Sun Life Ins. Co. of America v. Evans*, 340 So.2d 957, 959 (Fla. 3rd DCA 1976), explained:

> In *Equitable Life Assurance Society of United States v. Wiggins*, 115 Fla. 136, 155 So. 327 (1934), the Florida Supreme Court followed the principle that the phrase "total disability" is a relative term, depending upon the character of the occupation, the capabilities of the insured and the circumstances of the particular case, so that ordinarily, any question involving application of the term total disability, is a question of fact for the jury.

Additionally, the court concluded that "[i]t is necessary to look to the insured's occupation as a whole in order to determine whether the insured can no longer perform his occupa-

tional duties...." *Id.* Whether or not Dr. Ames was totally disabled was a question properly presented to the jury for a factual determination to be made from the terms of the policy and the evidence adduced at trial. It, therefore, would be inappropriate for the Court to grant Dr. Ames's request for JNOV on this issue.

■ In his Motion for New Trial, Dr. Ames argues that the Court erred in failing to admit various exhibits proffered for the record. The Court notes that "[a] trial judge has broad discretion over the admission of evidence...." *Wilson v. Bicycle South, Inc.*, 915 F.2d 1503, 1510 (11th Cir.1990) (*citing Borden, Inc. v. Fla. East Coast Ry. Co.*, 772 F.2d 750, 754 (11th Cir.1985)). This is particularly true of evidence that might be unfairly prejudicial. *Gee v. Owens–Illinois, Inc.*, 384 F.2d 704 (5th Cir.1967). At trial, Dr. Ames sought to introduce into evidence his entire disability claim file.[1] (Trial Transcript at 61). The Court concluded that certain documents contained within the file might be unfairly prejudicial, and properly disallowed its introduction into evidence. (Trial Transcript at 61–2, 65). The Court stated that it would allow the introduction into evidence of individual documents from the claim file, the Court merely declined to admit the file en masse. (Trial Transcript at 65). The Court, therefore, did not exclude relevant business correspondence or impede Dr. Ames's ability to cross-examine Provident's Vice–President, Tom Timparano, as alleged in Dr. Ames's Alternative Motion for New Trial. (*See* Motion for New Trial at 19).

■ Dr. Ames also sought to proffer a document referred to as the "Klueppelberg memoranda," marked as exhibit 22, to explain Provident's total disability policy. The document, however, was given to Dr. Ames by an insurance broker who was not even a legal agent of Provident. (Trial Transcript at 57–61). Dr. Ames asserts that the document was necessary in order to demonstrate "[t]he industry interpretation of what constituted 'total disability....'" (Alternative Motion for New Trial at 19). At trial, the

---

1. The exhibits at issue in the Alternative Motion for New Trial (except for exhibit 22 discussed below) were contained within the disability claim file that Dr. Ames sought to introduce.

Court concluded that the proffered evidence was not relevant to the issue before the Court—whether Provident had breached its contract with Dr. Ames—and properly denied the admission of exhibit 22. (Trial Transcript at 58–61).

Dr. Ames also argues that the Court erred in denying his request to charge the jury on Florida case law. (Alternative Motion for New Trial at 5–9). Dr. Ames claims that a plaintiff seeking to recover under a disability policy is entitled to a case law definition of total disability. In support of this proposition, Dr. Ames cites *Equitable Life Assurance Society of the United States v. Neill,* 243 F.2d 193 (5th Cir.1957).

■■■ In *Neill,* the Fifth Circuit held that the trial court was justified in charging the jury with the definition of total disability found in a Florida case. *Id.* The *Neill* court, however, did not hold that *all* plaintiffs are entitled to such an instruction. *Id.* at 196. Although language from appellate opinions may be useful in jury instructions in some cases, there is certainly no general rule entitling litigants in lawsuits over disability policies to such instructions as a matter of course.[2]

In the instant case, the jury charge on total disability was legally sufficient. The Court instructed the jury to consider the policy's definition of total disability in reaching its verdict. (Trial Transcript at 390). The policy defines total disability as follows: "due to Injuries or Sickness . . . you are not able to perform the substantial and material duties of your occupation," and adds, "[y]our ability to work will not matter." (Complaint, Exhibit A). Because the policy plainly and simply defined total disability, there was no need for extraneous and potentially confusing descriptions or definitions derived from case law.

■■■ As a final basis for new trial, Dr. Ames argues that the greater weight of the evidence mandates that he be found totally disabled. (Alternative Motion for New Trial at 4). As previously noted, the Court is not empowered to order new trial merely because of its judgment that the greater weight of the evidence contradicts the jury finding. *Watts v. Great Atlantic and Pacific Tea Co.,* 842 F.2d at 310. The Court could order a new trial if it found that the jury verdict was contrary to the *great* weight of the evidence. The Court, however, does not find that the great weight of the evidence contradicts the jury's verdict in the instant case.

For example, Dr. Zeide, an expert witness, testified that a physician may practice medicine within the recognized specialty of orthopaedic surgery without performing surgeries. (Trial Transcript at 230). Similarly, the jury could have understood Dr. Ames's testimony as an admission that he can still perform many of the substantial and material duties of an orthopaedic surgeon. (Trial Transcript at 93–96). While there was certainly some evidence that Dr. Ames was totally disabled, the Court cannot say that the great weight of the evidence forces that conclusion. The jury verdict as to total disability therefore must stand.

### VI. UNJUST ENRICHMENT

■■■ In its Counterclaim, Provident sought the return of residual disability benefits paid to Dr. Ames from April to December, 1992. Provident alleged that Dr. Ames procured the monthly benefits by wrongfully lowering his gross billing statements by 30%. At trial, the jury found that Dr. Ames had been unjustly enriched. Dr. Ames moves for a directed verdict on the unjust enrichment Count of Provident's Counterclaim.

Dr. Ames asserts that, as a matter of law, he did not provide incorrect financial information and, therefore, could not be liable under an unjust enrichment theory. However, the propriety of the 30% reduction in the gross billings information was a factual determination that the jury could have decided

---

2. In fact, Florida courts have criticized the use of dicta from appellate opinions in jury instructions:

 The need for instruction is determined by the issues litigated. The opinions of appellate courts necessarily employ legal terms not always generally understood. Their purpose is to define. Instructions have the broader purpose of aiding the jury in their understanding of the case.

 *Van Engers v. Hickory House, Inc.,* 118 So.2d 657, 657–58 (Fla. 3rd DCA 1960).

either way. The Court cannot say that there was insufficient evidence for a finding of unjust enrichment. "There can be no strict rule as to what constitutes unjust enrichment.... Everything depends on the circumstances of the individual case...." *Moore Handley, Inc. v. Major Realty Corp.*, 340 So.2d 1238, 1239 (Fla. 4th DCA 1976). The jury had ample evidence to conclude that Dr. Ames received payments from Provident which should be returned. Therefore, it would be inappropriate to grant a JNOV on this issue.

■■■ Dr. Ames apparently seeks a new trial on the unjust enrichment Count, claiming that the Court charged the jury with an erroneous instruction.[3] He claims that the instruction focused the jury's inquiry solely on the correctness or incorrectness of the financial statements, without reference to the other elements of common law unjust enrichment. (Plaintiff's Renewed Motion for Directed Verdict at 7).[4] However, Dr. Ames's counsel made no objection to the unjust enrichment instruction given at trial, and thereby forfeited the right to challenge the instruction after the jury rendered its verdict. (Transcript of Trial at 328–29). A party may not "generally assign as error the district court's failure to give an instruction that was never requested." *Wood v. President and Trustees of Spring Hill College*, 978 F.2d 1214, 1223 (11th Cir.1992) (*citing Bissett v. Ply–Gem Indus., Inc.*, 533 F.2d 142, 145 (5th Cir.1976); *Grey v. First Nat'l Bank in Dallas*, 393 F.2d 371, 386 (5th Cir.1968)). The purpose of Rule 51 is to "prevent unnecessary new trials because of errors the judge might have corrected if they had been brought to his attention at the proper time." *Indus. Dev. Bd. of Town of Section, Ala. v. Fuqua Indus.*, 523 F.2d 1226, 1238 (5th Cir. 1975) (*citing Cohen v. Franchard Corp.*, 478 F.2d 115, 122 (2d Cir.1973)). Rule 51 applies not only to appellate review, but also to a District Court's review of a jury verdict on a motion for new trial. *Fan Fare, Inc. v. Fourdel Indus., Ltd.*, 563 F.Supp. 754, 758 (M.D.Ala.1983) (*citing Cruthirds v. RCI, Inc.*, 624 F.2d 632, 635 (5th Cir.1980)).

■■■ However, the conclusion that Dr. Ames's counsel failed to timely object to the erroneous instruction, as required by Fed. R.Civ.P. 51, does not necessarily preclude any post-trial review of the instruction.

In this circuit there are two exceptions to the requirement that a party object to an erroneous jury charge: "(1) where the 'party's position has previously been made clear to the court and it is plain that a further objection would have been unavailing,'" and (2) "where the error is 'so fundamental as to result in a miscarriage of justice' if a new trial is not granted."

*King v. Allstate Ins. Co.*, 906 F.2d 1537, 1542 (11th Cir.1990) (citations omitted). Although the first exception does not apply in the instant case, the miscarriage of justice exception does apply. Great latitude is accorded the Court in granting a new trial for miscarriage of justice on the basis of incorrect jury instructions, *Cruthirds v. RCI, Inc.*, 624 F.2d 632 (5th Cir.1980), but "the power will only be exercised in exceptional cases." *Nowell v. Dick*, 413 F.2d 1204, 1211 (5th Cir.1969).

In order to merit reversal as plain error, [a party] must establish that the challenged instruction was an incorrect statement of the law and that it was probably responsible for an incorrect verdict leading to substantial injustice. *Rodrigue v. Dixilyn Corp.*, 620 F.2d 537, 541 (5th Cir.1980), *cert. denied*, 449 U.S. 1113, 101 S.Ct. 923, 66 L.Ed.2d 842 (1981). Where a jury is given an "erroneous charge which will 'mislead the jury or leave the jury to speculate as to an essential point of law,' the error is sufficiently fundamental to war-

---

**3.** The Court notes that Dr. Ames did not move specifically for new trial on the unjust enrichment count in his Alternative Motion for New Trial. He did, however, move generally for new trial on all issues (Alternative Motion for New Trial at 11–12). Alternatively, the court has discretion "to consider on its own motion errors patent upon the face of the record" and to order

new trial accordingly. *Dowell, Inc. v. Jowers*, 166 F.2d 214, 221 (5th Cir.1948).

**4.** Although Dr. Ames makes the erroneous jury instruction argument in his motion for JNOV, this argument is only appropriate to a motion for new trial, and is considered in determining whether a new trial should be granted.

rant a new trial despite a party's failure to state a proper objection."

*Pate v. Seaboard R.R., Inc.*, 819 F.2d 1074, 1083 (11th Cir.1987) (*quoting Cruthirds v. RCI, Inc.*, 624 F.2d at 632).

A brief analysis of relevant case law persuades the Court that a new trial on the basis of the faulty jury instruction is appropriate. In *Industrial Dev. Bd. of Town of Section, Ala. v. Fuqua Indus.*, 523 F.2d 1226, 1239 (5th Cir.1975), the Fifth Circuit granted a new trial based upon a jury instruction to which there was no timely objection. The Fifth Circuit reasoned that the trial court's "instruction on third-party beneficiary status may well have deprived [the appellant] of its right to have the real issue, contract and damage, decided." *Id.* Similarly, in *Hunt v. Liberty Lobby*, 720 F.2d 631, 647 (11th Cir. 1983), the Eleventh Circuit directed a new trial because the jury instructions created uncertainty as to whether the jury had followed constitutionally-mandated criteria in determining its verdict. Finally, in *Pate v. Seaboard R.R., Inc.*, 819 F.2d at 1083, the Eleventh Circuit held that when an erroneous jury instruction led to the risk that the jury "disregarded its function to consider all of the evidence and entered a verdict against [the] appellant solely because he testified on his own behalf," a new trial was warranted despite the lack of a timely objection.

In the instant case, the Court instructed the jury as follows:

The issues for your determination on Provident's counterclaim are whether the plaintiff, Donald Ames, either by himself or acting through his accountant, David Novak, provided incorrect financial information to Provident regarding Dr. Ames' monthly billings, and if so, whether Provident overpaid Dr. Ames residual disability benefits as a result.

(Trial Transcript at 390–1). Dr. Ames contends that this instruction "is some theory of negligent accounting," (Renewed Motion for Directed Verdict at 7), and cites the following case law for the essential elements of unjust enrichment:

[A] benefit conferred upon the defendant by the plaintiff, appreciation by the defendant of such benefit, and acceptance and retention of such benefit by the defendant under circumstances that it would be inequitable for him to retain it without paying the value thereof.

*Henry M. Butler, Inc. v. Trizec Properties, Inc.*, 524 So.2d 710 (Fla. 2d DCA 1988). A similar standard has been adopted by other District Courts of Appeal. *See, e.g., Hillman Construction Corp. v. Wainer*, 636 So.2d 576, 577–78 (Fla. 4th DCA 1994); *Challenge Air Transport, Inc. v. Transportes Aereos Nacionales, S.A.*, 520 So.2d 323, 324 (Fla. 3d DCA 1988).

The instruction given at trial misled the jury as to the parameters of its decision. An essential element of the unjust enrichment cause of action is the equity dimension. *See, e.g., Henry M. Butler, Inc. v. Trizec Properties, Inc.*, 524 So.2d at 711; *Challenge Air Transport, Inc. v. Transportes Aereos Nacionales, S.A.*, 520 So.2d at 324. For the jury to reach its verdict on a stark factual determination regarding the accurateness of the billing information, without considering the underlying equities of the situation, deprived Dr. Ames of his right to have the real issue decided. Because the instruction given misled the jury and left the jury to speculate as to an essential point of law, *see Pate v. Seaboard R.R., Inc.*, 819 F.2d at 1083, a new trial on the unjust enrichment Count is appropriate.

### V. CIVIL THEFT

Dr. Ames renews his motion for a directed verdict, or in the alternative requests new trial, on Provident's Counterclaim for civil theft. The handling of this issue at trial was marked by substantial error. During the charging colloquy, Dr. Ames's counsel moved for a directed verdict on all Counts. (Transcript of Trial at 337). The Court denied the motion. (Transcript of Trial at 338). Provident previously had proffered a proposed jury instruction on civil theft, which the Court submitted to the jury. (Defendant's Proposed Jury Instructions at 17). Dr. Ames proposed no jury instruction on civil theft, and failed to object to Provident's proposed civil theft instruction, other than to generally object to the civil theft Count going

to the jury at all. Dr. Ames's counsel candidly admits that he erred in failing to object to the instruction. (Transcript of January 25, 1994 Hearing at 22).

 Dr. Ames's post-trial attempt to assign as error the defective jury instruction encounters the same procedural barrier as his collateral attack on the unjust enrichment charge. No timely objection was made. Counsel's general objection to the civil theft Counterclaim going to the jury does not qualify as an objection to the underinclusiveness of the instruction.

 Under Fed.R.Civ.P. 51, an objection is not preserved for post-trial review unless it distinctly and specifically states the defect in the jury instruction. *Wood v. President and Trustees of Spring Hill College,* 978 F.2d at 1221; *see also Gorsalitz v. Olin Mathieson Chem. Corp.,* 429 F.2d 1033, 1040 (5th Cir. 1970); *St. Joe Paper Co. v. Hartford Accident and Indemnity Co.,* 376 F.2d 33 (5th Cir.1967). Dr. Ames has forfeited his opportunity to assert that the incorrect jury instruction affords him a new trial as a matter of right, and only prevails by virtue of the gross deficiency of the instruction.

As with the unjust enrichment Count, the Court concludes that instruction proposed by Provident and submitted to the jury was so misleading and incomplete as to lead to a miscarriage of justice. The Court instructed the jury as follows:

Florida Statute 812.014 defines civil theft: 1. A person is guilty of theft if he knowingly obtains or uses or endeavors to obtain or use the property of another with intent to either temporarily or permanently:
 A. Deprive the other person of a right to the property or a benefit therefrom.
 B. Appropriate the property to his own use or to the use of any person not entitled thereto.

(Transcript of Trial at 391).

 In Florida, the cause of action for civil theft, however, derives from *two* statuto-

ry sources: the criminal section setting forth the elements of theft, and the civil section granting private parties a cause of action for a violation of the criminal section. At trial, the Court instructed the jury only as to the criminal section. The Court also should have instructed the jury on the civil remedy for theft:

Any person who proves by clear and convincing evidence that he has been injured in any fashion by reason of any violation of the provisions of ss. 812.012–812.037 has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $200, and reasonable attorney's fees and court costs in the trial and appellate courts.

Fla.Stat.Ann. § 772.11 (West Supp.1994). Although the reading of § 812.014 properly apprised the jury of the elements of criminal theft, the jury was not instructed that Provident's burden of proof was "clear and convincing evidence." *Id.* Presumably, the jury only applied the "preponderance of the evidence" standard that was presented as the burden of proof for all Counts. (Transcript of Trial at 289).

The instruction given also failed to include any mention of the state of mind required for civil theft. The intent necessary for larceny is *animus furandi,* which means intent to steal, or felonious intent. *Daniels v. State,* 587 So.2d 460, 461–2 (Fla.1991) (*citing Long v. State,* 44 Fla. 134, 32 So. 870 (1902)). In order to prove civil theft, it is necessary to show not only that the defendant obtained or endeavored to obtain the plaintiff's property, but that he did so with the felonious intent to commit a theft.[5] Although the word "knowingly" appeared in the charge, this was insufficient to alert the jury to the high threshold of criminal intent necessary for the tort of civil theft. Taken together, the absence of

---

5. *See Lewis v. Heartsong, Inc.,* 559 So.2d 453, 454 (Fla. 1st DCA 1990) ("felonious intent" is necessary for finding civil theft); *Rosen v. Marlin,* 486 So.2d 623, 624 (Fla. 3d DCA 1986) (in action by one joint venturer against another, in order to find civil theft, the plaintiff must show

that the defendant had the intent to commit a theft); *Healy v. Suntrust Service Corp.,* 569 So.2d 458, 460 (Fla. 5th DCA 1990) (theft is a specific intent crime requiring actual intent to deprive someone of property knowingly).

the "clear and convincing" standard of proof and the lack of any charge as to criminal state of mind convince the Court that a miscarriage of justice would accrue if a new trial were not granted.

 Alternatively, new trial must be granted because the jury verdict contradicts the great weight of the evidence. In considering whether a new trial should be granted, the Court is free to weigh the evidence adduced at trial. *Bazile v. Bisso Marine Co.*, 606 F.2d 101, 105 (5th Cir.1979). If the Court concludes that the jury verdict was against the great weight of the evidence, granting a new trial is proper. *Id.* (*citing Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147 (1940); *Marsh v. Illinois Central R.R. Co.*, 175 F.2d 498 (5th Cir.1949)). While considering the motion for new trial, the Court is not bound by the erroneous jury instruction, but may consider the proper application of the prevailing law in the interests of justice. *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 255–256, 101 S.Ct. 2748, 2753–54, 69 L.Ed.2d 616 (1981).[6]

 The great weight of the evidence suggests that Dr. Ames did not commit the crime of theft, which is a necessary antecedent to a finding of civil theft. In its Opposition to Plaintiff's Renewed Motion for Directed Verdict, Provident suggests that the "smoking guns" in this case were Provident's Exhibits 8 and 40, and the testimony of David Novak, Mr. Ames's accountant, that he never told Provident that he was changing the billing formula. (Opposition at page 9, note 3). Exhibit 8 shows that in April of 1992, Dr. Ames began submitting 70% rather than 100% of gross billings to Provident when making requests for residual benefits. (Transcript of Trial at 248). Exhibit 40 demonstrates that Provident did not approve the change in billing procedures. (Transcript of Trial at 294). Mr. Novak testified that Dr.

Ames knew about and approved of the change in billing information presented to Provident. (Transcript of Trial at 253).

The mere fact that Dr. Ames approved of a change in the information submitted to Provident does not provide a clear and convincing basis for finding that he had a criminal intent to deprive Provident of its rightfully-owned property. At trial, Dr. Novak clearly testified that he considered the 70% gross billings method to be an appropriate indicator of income. (Trial Transcript at 273). Provident adduced no direct evidence of any kind of fraudulent or criminal state of mind attributable to Dr. Ames. While the jury could have inferred an intent to steal, the great weight of the evidence was against such a finding, and a new trial on the civil theft Count is appropriate.

 Although a new trial on the civil theft Count is warranted, JNOV is not. Dr. Ames's Renewed Motion for Directed Verdict essentially addresses the defective jury instruction, which is clearly not a ground for JNOV. After making arguments only appropriate to a motion for new trial, Dr. Ames summarily asserts that "[t]here was simply no evidence upon which a jury could lawfully find civil theft." (Provident's Renewed Motion for Directed Verdict at 11). To the contrary, there was some evidence that could suggest criminal intent to deprive another of property.[7] Although the great weight of the evidence was against a finding of civil theft, the Court cannot say that "the facts and inferences point so strongly and overwhelmingly in favor of [Dr. Ames] that the Court believes that reasonable men could not arrive at a contrary verdict." *Watts v. Great Atlantic and Pacific Tea Co.*, 842 F.2d 307 (11th Cir.1988) (*citing Boeing Co. v. Shipman*, 411 F.2d 365, 374–375 (5th Cir.1969)). The charge of civil theft should be decided by

---

**6.** In *Newport,* the Supreme Court considered whether a District Court had abused its discretion in granting a new trial after considering substantive legal questions raised by an untimely post-trial objection to a jury instruction. The Supreme Court declined to reverse the District Court on that issue, noting that "no interests in fair and effective trial administration advanced

by Rule 51 would be served...." 453 U.S. at 256, 101 S.Ct. at 2754.

**7.** For example, Dr. Novak testified that he changed billing practices (Trial Transcript at 248), and that he did so with Dr. Ames's support (Trial Transcript at 253).

a jury properly apprised of the elements of the tort.[8]

## VI. ATTORNEY'S FEES

Provident has moved for attorney's fees pursuant to Fla.Stat.Ann. § 772.11 (West Supp.1994), which permits the recovery of attorney's fees by a party who successfully prosecutes an action for civil theft. Because the Court is granting Dr. Ames's motion for new trial on the civil theft Count, the motion for attorney's fees is deferred until final disposition of the civil theft claim.

## VII. CONCLUSION

THE COURT has considered the Motions and the pertinent portions of the record, and being otherwise fully advised in the premises, it is ORDERED AND ADJUDGED as follows:

1. Plaintiff's Renewed Motion for Directed Verdict is hereby DENIED as to all Counts.

2. Plaintiff's Alternative Motion for New Trial is hereby DENIED as to Plaintiff's claim for total disability, and is hereby GRANTED as to Defendant's Counterclaim for unjust enrichment and civil theft. Accordingly, parts 2, 3, and 4 of the Final Judgment, entered on November 23, 1993, are hereby VACATED. After Provident has made a demand for $200.00 or treble damages in compliance with Fla.Stat.Ann. § 772.11 (West Supp.1994), it shall notify the Court, and a new trial shall be set on the unjust enrichment and civil theft claims.

3. Defendant's Motion to Set Attorney's Fees and Costs is hereby DEFERRED until entry of Final Judgment on the civil theft Count of Defendant's Counterclaim.

---

**8.** As a final matter, Fla.Stat.Ann. § 772.11 (West Supp.1994) requires plaintiffs to make a written demand for $200.00 or treble damages prior to filing a claim for civil theft. Dr. Ames asserts that Provident has failed to comply with § 772.11, and that JNOV is therefore appropriate. The Southern District of Florida has been lenient in the application of this rule (see *Korman* *v. Iglesias,* 736 F.Supp. 261, 267 (S.D.Fla.1990)), and there is no equitable or legal reason to enter JNOV because of Provident's procedural deficiency. The Court deems this failure to be excusable neglect, and directs Provident to make such a demand before this the civil theft count is set for retrial.