**POZZI WINDOW COMPANY,**
**Plaintiff,**

v.

**AUTO–OWNERS INSURANCE COMPANY, Defendant.**

No. 02–23093–CIV.

United States District Court,
S.D. Florida.
Miami Division.

Dec. 29, 2004.

Edmund M. Kneisel, Esq., Richard E. Dolder, Esq., Kilpatrick Stockton LLP, Atlanta, GA, for Plaintiffs.

Denise V. Powers, Esq., Denise V. Powers, P.A., Coral Gables, FL, for Defendants.

### ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW AND CONDITIONALLY GRANTING DEFENDANT'S ALTERNATIVE MOTION FOR NEW TRIAL

KLEIN, United States Magistrate Judge.

THIS CAUSE came before the Court on Defendant's Motion for Judgment as a Matter of Law or in the Alternative Motion for New Trial (D.E. No. 150–1, 150–2) filed on May 18, 2004; Plaintiff's Response to Defendant's Motion for Judgment as a Matter of Law (D.E. No. 164); Defendant's Reply thereto (D.E. No. 175); and Plaintiff's Surreply thereto (D.E. No. 177). The Court has reviewed the motion and responsive pleadings, the file, its own bench notes taken during trial and other evidence admitted at trial, and is otherwise fully advised in the premises. The Court GRANTS Auto–Owners' motion for judgment as a matter of law as to bad faith, GRANTS the motion as to punitive damages and therefore sets aside the jury award of punitive damages, DENIES the request to reconsider the district judge's summary judgment ruling, and GRANTS Auto–Owners' alternative motion for new trial, as discussed in greater detail below.

### BACKGROUND

This is a third-party action brought by Pozzi Window Company ("Pozzi") against Auto–Owners Insurance Company ("Auto–Owners") for breach of insurance contract

and common law bad faith. Following a jury trial and verdict awarding compensatory and punitive damages to Pozzi, Auto–Owners filed the instant motion for judgment as a matter of law or, in the alternative, for new trial. The relevant background facts are set forth below.[1]

Auto–Owners issued to Coral Construction of South Florida, Inc. ("Coral") and its president, James J. Irby ("Irby"), two identical commercial general liability policies ("policy"). The policy provided a general aggregate limit of $1 million as well as a separate aggregate limit for "Products–Completed Operations" of $1 million. While insured under the policy, Coral and Irby constructed a multi-million dollar house for Jorge Perez ("Perez") which included windows manufactured by Pozzi and installed by a subcontractor. After occupying the home, Perez complained of water damage caused by leakage around the windows.

Perez filed suit in state court against Pozzi, Coral, and the subcontractor ("Underlying Lawsuit"). Pozzi eventually settled with Perez, in part agreeing to remedy the defective installation of the windows. In the same lawsuit, Pozzi sued Coral and Irby for negligent supervision of the subcontractor. Coral made a claim under its insurance policy, and Auto–Owners asserted that the damages Pozzi was seeking from Coral and Irby were not covered under the policy. Auto–Owners provided a defense for Coral under a reservation of rights.

Auto–Owners brought a separate declaratory judgment action in state court, seeking a determination on the issue of coverage under the policy. Before the declaratory action was decided, Pozzi settled with Coral and Irby to resolve "all claims by Pozzi and all claims by Coral Construction and Irby against each other arising out of or related to the [Underlying Lawsuit]." *See* First Amended Complaint "(Compl.") (D.E. No. 124), Ex. F at 3. The settlement, memorialized in a Consent Judgment, entitled Pozzi to recover from Coral and Irby $646,726.00 in principal (bearing interest at the statutory rate) in addition to prejudgment interest of $163,298.00. *Id.* at 2. The settlement also included an assignment to Pozzi from Coral and Irby of their claims against Auto–Owners and rights under the policy.

Pozzi then commenced this lawsuit, alleging first that Auto–Owners breached its insurance contract by denying coverage for the claims Pozzi asserted against Coral and Irby in the Underlying Lawsuit; refusing to defend Irby or to reimburse his defense costs; and refusing to participate in settling Pozzi's claims (Count I). Pozzi next alleged that Auto–Owners acted in bad faith by refusing to defend Irby against Pozzi's claims in the Underlying Lawsuit, and further, that by ignoring the policy language and the rights to coverage under the policy, and by willfully and knowingly refusing to defend Irby, Auto–Owners engaged in dishonest, willful and reckless conduct and bad faith which warranted an award of punitive damages (Count II). Finally, Pozzi alleged that as assignee and pursuant to Fla. Stat. § 627.428, it is entitled to recover its fees and costs incurred on behalf of Coral and Irby in prosecuting this action to establish Auto–Owners' breach of contract and bad faith (Count III). *See* Compl.[2]

---

1. The background facts are taken from District Judge Jose E. Martinez's Order granting Pozzi's motion for partial summary judgment (D.E. No. 91), the parties' Joint Pretrial Stipulation (D.E. No. 120 at 4–5, ¶ 1.C and at 7,

¶ 5), and the First Amended Complaint (D.E. No. 124).

2. The Court permitted Pozzi to amend the complaint just before trial, to *expressly* state it was seeking punitive damages.

Auto–Owners subsequently filed a counterclaim seeking declaratory relief and a determination that it had no duty under the policy to defend Coral and Irby and that coverage under the policy did not exist (D.E. No. 23).

The parties filed cross-motions for summary judgment. After examining the insurance policy at issue here, Judge Martinez determined as a matter of law that coverage existed under the policy and that Auto–Owners had breached its duty to defend under the policy. Judge Martinez therefore granted partial summary judgment for Pozzi. *See* Order Granting Pozzi's Motion for Partial Summary Judgment, Denying Auto–Owners' Motion for Summary Judgment, and Granting Third-Party Defendants' Motion for Judgment on the Pleadings ("Order on Summ. J.") (D.E. No. 91).

The parties then consented to trial and entry of final judgment by magistrate judge, and the case proceeded to trial before this Court on the issues of damages based on coverage under the policy, bad faith, and punitive damages. Before the case was submitted to the jury, Auto–Owners moved for directed verdict on these issues. The Court reserved ruling, and the case was sent to the jury, which returned a verdict for Pozzi. Specifically, the jury found that:

1) the settlement between Coral or Irby and Pozzi was not the product of collusion or fraud;

2) the settlement in the amount of $646,726.00, between Pozzi and Coral and Irby as specified in the Consent Judgment in the Underlying Lawsuit, was not reasonable and in good faith;

3) Coral and Irby and Pozzi acted in good faith and reasonably in settling the Underlying Lawsuit, but $300,000.00 was a reasonable settlement amount;

4) Auto–Owners acted in bad faith in denying coverage for the claims asserted by Pozzi against Coral and Irby in the Underlying Lawsuit;

5) Auto–Owners acted in bad faith in breaching its duty to defend Irby against Pozzi's claims in the Underlying Lawsuit; and

6) an award of punitive damages in the amount of $500,000.00 was warranted.

*See* Special Interrogatories to the Jury (D.E. No. 146). Thereafter the Court entered final judgment in favor of Pozzi and against Auto–Owners in the amounts specified by the jury (D.E. No. 147).

Auto–Owners timely moved pursuant to Fed.R.Civ.P. 50 for judgment as a matter of law on three issues. This is the motion presently before the Court. First, Auto–Owners asserts that the facts adduced at trial were legally insufficient to support punitive damages and therefore asks the Court to set aside the jury's award of punitive damages and enter judgment in its favor on this issue. Next, Auto–Owners contends that the evidence was legally insufficient to support the jury's finding of bad faith, and asks the Court to enter judgment for it on this issue as well. Finally, Auto–Owners asks this Court to revisit Judge Martinez's ruling on summary judgment and conclude, based on evidence presented at trial, that coverage for Pozzi's claims against Coral and Irby does not exist under the policy at issue here. It therefore seeks the entry of judgment in Auto–Owners' favor on coverage. In the alternative, and citing to Fed.R.Civ.P. 59, Auto–Owners requests a new trial on all issues. *See* Defendant Auto–Owners Insurance Company's Motion for Judgment as a Matter of Law or in the Alternative Motion for New Trial ("Mot.") (D.E. No. 150).

## LEGAL STANDARD

 Auto–Owners renewed its motion for directed verdict (judgment as a matter of law) made at the close of the evidence, as permitted by Rule 50(b). The Court reviews Auto–Owners' motion under the standard set forth in Rule 50(a), which allows a court to render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Judgment as a matter of law under Rule 50 should be granted where "the evidence is so weighted in favor of one side that one party must prevail as a matter of law." *Thosteson v. United States,* 331 F.3d 1294, 1298 (11th Cir.2003).

 The Court must review all of the evidence in the record, in the light and with all reasonable inferences most favorable to the party opposing the motion.[3] *See e.g., Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000); *Key Enters., of Del., Inc. v. Venice Hosp.,* 919 F.2d 1550, 1556 (11th Cir.1990).

> If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied.

*Key Enters.,* 919 F.2d at 1556 (citation omitted). The non-moving party must put forth more than a mere scintilla of evidence to create a jury question. *Thosteson,* 331 F.3d at 1298. A motion for judgment as a matter of law "need not be reserved for situations where there is a complete absence of facts to support a jury verdict. Rather, there must be a substantial conflict in evidence to support a jury question." *Carter v. City of Miami,* 870 F.2d 578, 581 (11th Cir.1989). In considering a motion under Rule 50, the Court may not weigh the evidence or make credibility decisions. *Reeves,* 120 S.Ct. at 2110.

## ANALYSIS

I. *Motion for Judgment as a Matter of Law*

A. *Bad Faith*

 Auto–Owners argues that the jury's finding of bad faith was not supported by legally sufficient evidence and is against the clear weight of the evidence. Auto–Owners claims that Pozzi sustained no damages other than the Consent Judgment which was for an amount within the policy limits (and, consequently, Pozzi failed to establish one of the elements necessary to prove an independent tort).[4]

---

**3.** Pozzi suggests that Auto–Owners' failure to supply the Court with a transcript of the trial makes it impossible for the Court to review *all* the evidence in the record and the reasonable inferences arising therefrom. That is not so; the Court has relied on its recollection of the evidence adduced at trial, its own bench notes, and the briefing of the parties in connection with said motion, and *has* considered *all* the evidence in the record. *See generally Kinser v. Gehl Co.,* 1998 WL 231065, *2 (D.Kan. Apr.21, 1998) (court relied upon "its recollection of all the evidence, its own notes of trial testimony, and the briefing of the

parties" in evaluating, and denying, a motion for judgment as a matter of law); *Kowalski v. Am. S.S. Co.,* 954 F.Supp. 140, 144 (E.D.Mich.1995) (noting that a court generally does not order a transcript of the entire trial in order to rule on a Rule 50 motion, but instead relies on its bench notes and recollection as well as the assertions of counsel for the non-moving party).

**4.** An independent tort must be proven in order to prevail on a claim for punitive damages, a subject that will be discussed in Section B, *infra.*

Auto–Owners further claims as follows: the evidence did not show a dereliction of its duties toward its insureds as it defended both Coral and Irby under a reservation of rights; it filed a declaratory action to resolve the coverage dispute promptly and tried to obtain a stay so as to limit any potential prejudice to Coral and Irby; the weight of legal authority on the coverage issue was in its favor (notwithstanding Judge Martinez's ruling on the matter); and it tried to settle Pozzi's claim in the face of the coverage dispute. *See* Mot. at 4–5, 7–8.

Pozzi counters that the evidence as a whole *did* show bad faith on Auto–Owners' part; for example, it claims Auto–Owners ignored Irby's right to an individual defense (separate and apart from the defense of his company, Coral) and offered a "sham" defense only upon learning that a settlement between the insureds and Pozzi was imminent; that it violated the Florida Claims Practices Act; that it continuously insisted there was no coverage under the policy; and it exposed Coral and Irby to financial ruin and bankruptcy if they had not settled the Underlying Lawsuit. *See* Plaintiff's Response to Defendant's Motion for Judgment as a Matter of Law ("Resp.") at 7–9, 12–13. To contradict Auto–Owners' assertion that Irby and Pozzi did not sustain any damages, Pozzi argues the evidence showed that Irby incurred, and is liable for, attorney's fees in defending himself in the Underlying Lawsuit due to Auto–Owners' breach of its duty to defend; and that Pozzi obtained a Consent Judgment in its favor (after incurring damages for repairing Perez's home) for which Auto–Owners refused to provide coverage. *Id.* at 8. Pozzi argues that when this evidence and the reasonable inferences drawn therefrom are viewed in the light most favorable to it (Pozzi), the jury's finding that Auto–Owners abandoned its insureds and breached its fiduciary obligation of good faith should be sustained.

In Florida, an insurance company acts in bad faith in failing to settle a claim when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for their interests. *State Farm Mut. Auto. Ins. Co. v. Laforet*, 658 So.2d 55, 62 (Fla.1995). In evaluating a claim of bad faith, the fact-finder should take into account the totality of the circumstances, *id.*, including, as the jury was instructed in this case:

> (1) the efforts or measures taken by Auto–Owners to resolve the coverage dispute promptly or in such a way as to limit any potential prejudice to Coral and Irby;
>
> (2) the substance of the coverage dispute or the weight of legal authority on the coverage issue;
>
> (3) the insurer's diligence and thoroughness in investigating the facts specifically pertinent to coverage; and
>
> (4) efforts made by Auto–Owners to settle Pozzi's claim in the face of the coverage dispute.

*See* Court's Instructions to the Jury ("Jury Instr.") (D.E. No. 144) at 11. *See also Laforet*, 658 So.2d at 63 (setting forth factors that should be considered when evaluating bad faith claims).

Evaluating these factors in the context of the record as a whole, the Court concludes the evidence is insufficient as a matter of law to support Pozzi's claim of bad faith. The evidence shows that Auto–Owners denied coverage, defended the case under a reservation of rights, challenged coverage through the appropriate legal mechanism, and eventually was found to be wrong on the issue of coverage. Despite Pozzi's characterization of the evidence, it is clear that Auto–Owners did what insurance companies properly do when they have a serious doubt as to coverage: it defended under a reservation

of rights, and sought declaratory relief on the question of coverage. There was no evidence of unreasonable conduct, no evidence of any independent tort, and no evidence that it exposed its insureds to excess judgments by its conduct. It did not mislead its insureds, and did not cause them any damages other than the amount of coverage provided by the policy.

Moreover, the testimony presented by Auto–Owners on its analysis of the coverage question based on existing case law and the history of the policy provision at issue was not so unreasonable that it evidenced either a calculated plan to injure the insureds or was part of a pattern of misconduct by the insurer. Nor did Pozzi's presentation of its evidence or its cross-examination of Auto–Owners' case undercut or significantly contradict the fact of Auto–Owners' appropriate conduct. On the contrary, the testimony as a whole presented by both sides on the issue of Auto–Owners' method of proceeding was rational and cohesive, and displayed nothing more than a reasoned and careful analysis of the legal issues, and a course of conduct designed to insure that the rights of the insureds would be protected while Auto–Owners pursued its legal rights to determine coverage.

The question of coverage was and is open to serious debate, and the denial of coverage, far from being arbitrary and in bad faith, had a sufficient basis in law and fact to warrant Auto–Owners' decision to seek a declaration as to coverage. It took immediate steps to promptly resolve the dispute, and exhibited care in assuring that the rights of the insureds were adequately protected. In sum, it well satisfied the first three factors delineated in *Laforet, supra.* As for the fourth factor, i.e., whether Auto–Owners made any efforts to settle Pozzi's claim in the face of the coverage dispute, there was evidence that it did in fact try to do so. However,

in an instance such as here, this factor is the least important. That is because the insureds were never exposed to a possible judgment in excess of the policy limits. In fact, Pozzi settled with Coral and Irby for an amount ($646,726) within the policy limits ($1 million); thus, the insureds suffered no real damages other than the fact of denial of coverage.

Furthermore, the damages Pozzi claims Irby sustained in having to pay his own attorney are those which normally devolve from an insurer's denial of coverage. Such payments are not proof of egregious conduct or of an independent tort; they are the normal consequence of denial of coverage, and absent some showing of other conduct that serves to show reckless indifference of the insurer to the insureds, the fact of having to resort to advice of one's own private counsel is insufficient in and of itself to show bad faith. For the same reason, Auto–Owners' refusal to provide coverage after the Consent Judgment was entered in state court against Coral and Irby, before a determination on coverage was rendered, does not in and of itself evidence bad faith. The fact of the parties' entry into a consent judgment adds nothing to resolve the question of coverage, nor as to whether Auto–Owners was obliged to settle for the amount to which the parties privately agreed. In fact, the jury's finding that the amount of the settlement, i.e., $646,726, was not reasonable nor in good faith, and the finding that less than half that amount, i.e., $300,000, was reasonable, bolsters the position that Auto–Owners had no obligation to settle for the amount agreed upon by the parties. Moreover, the claim that the insureds might have suffered financial· ruin and bankruptcy because of the denial of coverage also is not proof of bad faith. The insureds totally failed to substantiate this claim, and even if they presented some evidence on the issue, its relevance and

admissibility is doubtful in the face of an otherwise legitimate coverage dispute.

In sum, the evidence viewed as a whole and in the light most favorable to Pozzi was insufficient as a matter of law to support the claim that Auto–Owners denied coverage for Coral and Irby in bad faith. Accordingly, the Court grants Auto–Owners' motion for judgment as a matter of law on the bad faith issue.

### B. *Punitive Damages*

■■■■ Auto–Owners also contends that Pozzi failed to meet its burden of proof on the issue of entitlement to punitive damages. "Punitive damages are recoverable in third party bad faith suits at common law in Florida." *Dunn v. Nat'l Sec. Fire & Cas. Co.*, 631 So.2d 1103, 1108 (Fla. 5th DCA 1994). To recover punitive damages, "the conduct of the insurer against the interests of the insured must be so egregious as to constitute an independent tort." *Id.* (citing *T.D.S. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520 (11th Cir.1985)). In general, dishonesty, misrepresentations, or fraudulent conduct must be alleged and proven. *Id.; see also Butchikas v. Travelers Indem. Co.*, 343 So.2d 816, 818 (Fla. 1977) (punitive damages warranted in a case involving deliberate, overt, and dishonest dealing); *Campbell v. Gov't Employees Ins. Co.*, 306 So.2d 525, 532 (Fla. 1975) (punitive damages award upheld where evidence showed a continued course of dishonest dealing on the part of the insurer toward the insured). A party must establish its entitlement to an award of punitive damages by clear and convincing evidence. Fla. Stat. § 768.725.

The jury in this case was instructed that punitive damages were warranted

if you find by clear and convincing evidence that Auto–Owners was personally guilty of intentional misconduct or gross negligence. "Intentional misconduct" means that Auto–Owners had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to Coral and Mr. Irby would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage. "Gross negligence" means that the conduct of Auto–Owners was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.

*See* Jury Instr. at 19.

It is Auto–Owners' position that Pozzi failed to present evidence that Auto–Owners was personally guilty of either intentional misconduct or gross negligence. The Court agrees. As previously discussed, Auto–Owners did what any insurance company normally and properly does when it has a serious doubt as to coverage: defends under a reservation of rights, and seeks declaratory relief on the question of coverage. Again, the evidence shows that Auto–Owners engaged in a course of conduct designed to protect the rights of its insureds while seeking a legal determination on the disputed issue of coverage.

Pozzi argues that Auto–Owners' motion could be granted only if the Court concluded that the jury believed everything Auto–Owners said, disregarded all of the contrary evidence, and construed all inferences in Auto–Owners' favor. *See* Resp. at 14. Pozzi contends, however, that the jury was entitled to disbelieve everything Auto–Owners said at trial, and to find that Auto–Owners engaged in improper conduct by waiting until Irby and Pozzi announced their intention to settle and then belatedly requesting that an attorney, Mr. Berger, file an appearance on Irby's behalf, while continuing to refuse to reimburse Irby for the defense costs he incurred unless he agreed not to settle with Pozzi. *Id.* Pozzi cites Auto–Owners' letter

of June 10, 2002, as evidence that Auto–Owners was attempting to prevent consummation of the settlement, contradicting the insurance company's assertions that Pozzi, Coral, and Irby were trying "secretly" to settle. *Id.* This letter, sent to Irby's personal attorney (Stanley Klett) for "settlement purposes and [to] confirm certain discussions we have had," states in relevant part:

> .... Auto–Owners has agreed to undertake the defense of James Irby who was recently added as a defendant by Pozzi Windows.... under the same reservations of rights as to coverage as was issued to Coral Construction.
>
> Tom Berger has filed a Notice of Appearance and with your client's written consent will continue to defend both Coral Construction and Mr. Irby in the claim by Pozzi Windows. As part of this agreement, Auto–Owners will reimburse your client for the attorneys' fees that it has paid you in the defense of Mr. Irby....
>
> As part of the settlement, if your clients do not assign any claim to Pozzi and do not otherwise enter into any agreement with Pozzi or in any way compromise Pozzi's claim against your clients, Auto–Owners will reimburse your client for reasonable expenses for food and lodging incurred in the trial of the underlying claim brought by Pozzi.
>
> In addition, if your clients, both Coral Construction and James Irby, agree and stipulate to be bound by any determination of coverage in the currently pending declaratory action, Auto–Owners will drop Coral Construction and not add James Irby to the coverage case.... Auto–Owners will use its best efforts to resist any attempts to bring your clients back into the case....
>
> You, on behalf of your clients, will assist and use your best efforts in trying to obtain a stay of the main action pending in front of Judge Gersten, so as to allow the coverage issue to be decided before trial in the main action.

*See* Resp., Ex. F. An objective reading of this letter does not support Pozzi's interpretation that Auto–Owners attempted to prevent Coral and Irby from settling with Pozzi. Rather, it shows Auto–Owners attempted to fulfill its obligation to defend its insureds (under a reservation of rights). The letter does not show Auto–Owners refused to reimburse Irby's defense expenses unless he agreed not to settle with Pozzi; instead, it advised that if Irby did agree to a defense by Auto–Owners (as was being proposed), the insurer would reimburse Irby's defense costs, including attorney's fees incurred by Irby. The letter also stated if there were no agreement with Pozzi, Auto–Owners would pay Irby's *reasonable expenses for food and lodging incurred in the trial* in the Underlying Lawsuit. This clause did not state Auto–Owners would reimburse his defense costs if and only if Irby refused to settle. The only penalty to Irby for refusing to settle was the loss of food and lodging money for the trial. He was still free to settle under the terms of the letter and would still receive a defense if he did not. Again, the letter merely shows a reasonable course of conduct by Auto–Owners by considering the rights of its insureds while simultaneously preserving its right to litigate the coverage question. The insureds were never exposed to any other damages such as an excess judgment, because none was ever sought. The amount of damages demanded were always within the amount of coverage of the policy. Pozzi's argument that the Court could only grant Auto–Owners' motion if it believed everything Auto–Owners said at the trial and disregarded all contrary evidence is incorrect. There was no evidence presented that warranted punitive damages, and therefore, credibility was simply not an issue.

Pozzi also argues punitive damages are warranted because the evidence showed that Auto–Owners affirmatively and intentionally misrepresented the terms of the policy to Coral and Irby throughout the Underlying Lawsuit, even after contradictions in Auto–Owners' interpretation of the policy were pointed out to it at mediation. *See Resp.* at 15–16. Pozzi further argues it established at trial that the case law Auto–Owners submitted as evidence of its good faith denial coverage was inapplicable, and that there really was no basis for such denial. *Id.* at 16–17. According to Pozzi, viewing this evidence in the light most favorable to the non-moving party, a reasonable jury could conclude by clear and convincing evidence that Auto–Owners' actions in refusing to settle the Underlying Lawsuit manifested either a willful intent to disregard the contractual rights of Coral and Irby or gross negligence that imputed a conscious disregard of its insureds' interests. *Id.* at 16; *see also* Plaintiff's Sur–Reply to Defendant's Motion for Judgment as a Matter of Law or in the Alternative Motion for New Trial ("Sur–Reply") (D.E. No. 177) at 4.

As previously explained, Auto–Owners' position with respect to coverage was not intentionally wrongful, grossly negligent, and not even necessarily incorrect. Mr. Norris carefully explained Auto–Owners' legal position, and substantiated it with case law and sound interpretation. This Court reviewed the cases relied on by Auto–Owners and heard the testimony explaining Auto–Owners' legal position, and finds them to provide, at a minimum, a sufficient legal foundation for a reasonable denial of coverage. Contrary to Pozzi's contention, Mr. Norris did not admit that case law provided no basis for his company's position, or that the company's refusal to settle was groundless or arbitrary. There simply is no evidence in this case of a calculated plan to injure Coral and Irby or a pattern of misconduct by Auto–Own-ers such that punitive damages are warranted.

Furthermore, in order to recover damages arising from an insurer's bad-faith handling of a claim, the party claiming such damages must prove that he has been injured in some way as a result of the insurer's activity. *See e.g., Conquest v. Auto–Owners Ins. Co.,* 773 So.2d 71, 74 (Fla. 2d DCA 1998) (plaintiff failed to show a factual nexus between the damages she claimed and the insurer's actions); *Fid. & Cas. Co. of N.Y. v. Cope,* 462 So.2d 459, 461 (Fla.1985) ("An essential ingredient to any cause of action is damages."). The damages Pozzi sought from Coral and Irby in the Underlying Lawsuit fell within the amount of coverage afforded by the policy at issue here. It (and the insureds) suffered no other damages, such as exposure to an excess judgment. Thus, Pozzi (and the insureds) had no claim, and proved up no claim, for compensatory damages over and above the amount of coverage provided by Auto–Owners based on the mere fact of Auto–Owners having denied coverage. Without damages, Pozzi failed to show that Auto–Owners' actions resulted in some damage other than the denial of coverage, and therefore, Pozzi cannot prevail on its claim for punitive damages.

In an ordinary case involving bad faith, an insured is exposed to a judgment against him in excess of the policy limits. If such a judgment is entered as a result of the insurance company's wrongful acts, e.g., its failure to settle within the policy limits when it could have done so, then the insured has suffered damages as a result of the actions of the insurer. But where, as here, the settlement or the judgment is within the policy limits, the insured has suffered no independent damages other than the amount of coverage for which the insured contracted and the insurer has refused to pay. Therefore, the insured has no basis to claim any actual damages

beyond the coverage provided by the policy since he is not being called upon to pay more to the person whom he injured than the policy provided. Without compensatory damages, a claim for punitive damages cannot stand. As for the claim that Irby also incurred attorney's fees, such fees are also within the ambit of the coverage provided; if the insurer is wrong in its denial of coverage, it will be liable for those fees as well as for the coverage. But such fees do not form the basis for independent damages as an excess judgment would.

In sum, Pozzi failed to show at trial by clear and convincing evidence that Auto–Owners' conduct was so egregious as to constitute an independent tort. The record does not show that Auto–Owners engaged in a continued course of dishonest dealing toward Coral and Irby, but instead that the insurer denied coverage, defended the case under a reservation of rights, challenged coverage through the appropriate legal mechanism, and eventually was found to be wrong on the issue of coverage. Accordingly, the Court concludes that the evidence presented to the jury was legally insufficient to support a finding that Auto–Owners was personally guilty of intentional misconduct or gross negligence, and, therefore, the Court grants Auto–Owners' motion for judgment as a matter of law on the punitive damages issue. The Court sets aside the jury's award of $500,000.00 in punitive damages and will enter an amended Final Judgment to so reflect.

### C. *Prior Summary Judgment Ruling*

Auto–Owners argues that Judge Martinez's order granting summary judgment for Pozzi on the issues of coverage under the policy and the duty to defend was erroneous "[b]ased on the testimony at trial." *See* Mot. at 8. In particular, Auto–Owners cites the testimony of attorneys for the parties (Newman, Klett, and Norris) and Pozzi's expert (Gallagher) regarding their interpretation of the policy at issue and whether existing Florida law provided coverage for Pozzi's claim against Coral and Irby. *Id.* at 8–9. Arguing that this testimony demonstrated there was no coverage under the policy, Auto–Owners asks this Court to revisit the prior ruling, find that Judge Martinez failed to follow Florida law, and enter judgment in its favor on coverage.

The Court points out that Judge Martinez ruled *as a matter of law* that the policy at issue in this case provided coverage. *See* Order on Summ. J. at 5. Judge Martinez found the language of the policy to be clear and unambiguous and, under Florida law, the language of the policy controlled. *Id.* Judge Martinez's decision was one of law, not fact. The evidence presented at trial had no effect on this legal ruling. The determination that Auto–Owners breached its duty to defend stemmed directly from the ruling that coverage existed. *Id.* at 6. To the extent Auto–Owners wishes to revisit this issue, the undersigned Magistrate Judge is without authority to modify the rulings of the District Court which entered judgment on the issue. Accordingly, the request to revisit the summary judgment ruling is denied.

### II. *Alternative Motion for New Trial*

Auto–Owners moves in the alternative for a new trial "on all issues." *See* Mot. at 11.[5] Because the Court is granting Auto–

---

**5.** Auto–Owners does not explain why it is entitled to a new trial on *all* the issues. Rule 59 permits a court to grant a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Auto–Owners has not articulated, and the Court will not speculate, why a new trial should be granted as to any of the matters not ruled upon in this order.

Owners' renewed motion for judgment as a matter of law on bad faith and punitive damages, pursuant to Rule 50(c)(1) the Court must also rule on the motion for new trial.

A motion for a new trial is committed to the sound discretion of the trial court. *Ames v. Provident Life & Accident Ins. Co.*, 942 F.Supp. 551, 555 (S.D.Fla.1994) (citing *McDonough Power Equip., v. Greenwood,* 464 U.S. 548, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984)). A trial judge may grant a motion for new trial if the jury verdict is contrary to the great weight of the evidence. *Watts v. Great Atlantic & Pacific Tea Co., Inc.*, 842 F.2d 307, 310 (11th Cir.1988). The judge may weigh the evidence, but to assure he does not simply substitute his judgment for that of the jury, "he must find the verdict contrary to the great, not merely the greater, weight of the evidence." *Id.*

For the reasons already articulated, because the evidence was insufficient as a matter of law to support the jury's verdict as to bad faith and punitive damages, the Court concludes the jury's verdict on these two issues is against the great weight of the evidence. Accordingly, the Court conditionally grants Auto–Owners' motion for a new trial on these issues. In the event the judgment discussed in this Order is vacated or reversed on appeal, a new trial may proceed on bad faith and punitive damages only.

### CONCLUSION

Based on a review of the evidence presented at trial, viewed in the light most favorable to Pozzi, the Court concludes there was legally insufficient evidence to support the jury's finding that Auto–Owners acted in bad faith in denying coverage to Coral and Irby, or the jury's award of punitive damages. Accordingly, the Court grants Auto–Owners' motion for judgment as a matter of law on these two issues.

The jury verdict in all other respects is affirmed. The Court denies the request to revisit Judge Martinez's summary judgment ruling.

The Court also grants Auto–Owners' alternative motion for a new trial if the judgment on bad faith or punitive damages is vacated or reversed. Pursuant to Rule 50(c)(1), the motion for new trial is conditionally granted, and this order does not affect the finality of the judgment in favor of Auto–Owners.

It is hereby **ORDERED AND ADJUDGED** that

1) Defendant's Motion for Judgment as a Matter of Law (D.E. No. 150–1) is **GRANTED in part and DENIED in part,** as follows:

a) The Court enters judgment as a matter of law for Auto–Owners on the issue of bad faith denial of coverage.

b) The Court enters judgment as a matter of law for Auto–Owners on the issue of punitive damages, and SETS ASIDE the jury's verdict on punitive damages and assessment of $500,000.00 against Auto–Owners as punitive damages.

c) The Court AFFIRMS the jury verdict in all other respects.

2) Defendant's Alternative Motion for New Trial (D.E. No. 150–2) is **CONDITIONALLY GRANTED** as stated herein.