**Bettye CRUTHIRDS, Plaintiff-Appellee,**

v.

**RCI, INC., d/b/a Red Carpet Inn of Beaumont, Texas, Defendant-Appellant.**

No. 78–2876.

United States Court of Appeals, Fifth Circuit.

Aug. 21, 1980.

William B. Coffey, Jr., Beaumont, Tex., for defendant-appellant.

Peterson, Petit & Peterson, Thomas A. Peterson, Beaumont, Tex., for plaintiff-appellee.

Before MORGAN, CHARLES CLARK and TATE, Circuit Judges.

LEWIS R. MORGAN, Circuit Judge.

Bettye Cruthirds brought this personal injury action against RCI, Inc., d/b/a Red Carpet Inn of Beaumont, Texas, for injuries she had suffered in a fall down the steps of a darkened lounge at RCI's motel. The first trial resulted in a jury verdict for RCI, but the district court granted Cruthirds' motion for a new trial on the grounds that the court had erred in its use of a general verdict, and that the verdict was against the great weight of the evidence.

Most of the circumstances leading to Cruthirds' accident are not disputed. Cruthirds stopped at RCI's motel with her daughter Mary, and two friends, Sylvia and Gloria Gibson, on her way home to Sulphur, Louisiana after a day-long outing to Houston on January 27, 1976. Neither she nor her companions had ever visited the Beaumont Red Carpet Inn before.

After entering through the well-lit lobby of the motel, the four women walked to the Coach and Horses Lounge, located in a room adjacent to the lobby. The lighting in the lounge had been dimmed for atmosphere. Cruthirds and the rest of her party were led single file through the lounge by a host toward a table in the main bar area known as the "pit."

Along the way from the lounge entrance to the pit were two descending steps. At the time of Cruthirds' accident there were no handrails by the steps, but the path was inconspicuously illuminated by riser lights. Whether the riser lights were sufficiently visible to guests entering the lounge from the brighter lobby or outdoors is one of the hotly contested issues of this case.

Also contested is whether the host stood by the steps to give a warning until each of the women had passed. The host was not called as a witness by either party, but Terry Bucher, an employee of Red Carpet, testified that it was the practice of the host to warn guests of the steps, and that the host was positioned by the steps when Cruthirds fell. Cruthirds and two of her companions testified, however, that the host proceeded to the table, followed by Mary and Gloria, before Cruthirds and Sylvia had reached the steps.

As Bettye Cruthirds approached the pit, she noticed the first step just as she came to the edge. She stepped down without difficulty, and with both feet on the middle tread turned to warn Sylvia Gibson of the step down. Cruthirds then turned in the direction of the pit to look for Mary and Gloria. Believing she was on the main floor, she stepped forward without looking down and missed the second step, and in falling severely injured her left arm.

Douglas Steinman, an architect who was called as an expert witness by Cruthirds, testified that the illumination cast on the floor by the riser lights was blocked by the step and made invisible to persons approaching the steps from the upper level. The illumination became visible only as one came to within three and a half feet from the edge of the steps. Steinman further testified that the general lighting of the room, measured at less that two watt candlepower, presented a special hazard to those whose eyes had not yet adjusted to the dark.

Many of the simple visual cues typically found on or around steps were absent from the lounge steps. Steinman noted that since the steps were located across a corner of the lounge, the tread was splayed and its intersection with the wall hidden from view to those approaching from the entrance. He also suggested that adequate warning to guests could easily have been provided without destroying the atmosphere of the lounge, by installing a handrail or by covering the steps with carpeting of a color different from that of the upper and lower levels.

August Ward, General Manager of the Red Carpet Inn, testified that there had been no serious accidents on the steps until Cruthirds' injury, but he admitted that he may have received complaints about the steps from his employees. One of the motel's employees, Terry Bucher, testified that she had observed many guests and employees miss either the first or second step, and that she had often discussed the problem with management.

■ Under the law of Texas, an owner-occupier owes to his guests the duty to correct any unreasonable hazard on the premises if the owner-occupier knows or should know of the hazard and should expect that his guests will not discover the hazard. *Adam Dante Corp. v. Sharpe*, 483 S.W.2d 452 (Tex.1972). In return, guests owe a duty to watch for obvious hazards and to exercise reasonable caution in moving about the premises. *Brownsville & Ma-*

*tamoros Bridge Co. v. Null,* 578 S.W.2d 774 (Tex.Civ.App.1978).

■ If the owner-occupier is found to have been negligent in failing to make the premises reasonably safe for his guests, the contributory negligence of the guest is not an absolute defense unless the guest was more negligent than the owner-occupier. Tex.Rev.Civ.Stat.Ann. art. 2212a. If the guest's negligence is less than or equal to that of the owner-occupier, the damages recoverable must be reduced in proportion to the guest's share of fault. *Id.*

Thus, the issues submitted to the jury in the trial of this case were whether the dim lighting of the lounge made the steps dangerous to invitees unfamiliar with the lounge; whether the installation of riser lights was a reasonably adequate precaution; whether RCI knew or should have known of any lingering unreasonable danger; and whether Cruthirds was negligent to a greater, equal or lesser decree than RCI in failing to spot the second step. A verdict for RCI could only be supported by a finding that RCI was not negligent, or that Cruthirds was more negligent than RCI.

The district court stated two grounds for disregarding the verdict and granting a new trial. First, the court was concerned that its charge to the jury with respect to comparative negligence, and its use of the general form of verdict, were "erroneous under the circumstances of this case. . . ." Second, the court found that the verdict was "against the great weight and preponderance of the evidence. . . . " A third ground stated by the court, that a new trial was needed "to prevent a miscarriage of justice," is not really a separate ground for a new trial but only a statement of the function of a new trial.

■ A motion for a new trial is addressed to the trial court's discretionary authority, and the trial court's decision on the motion may be reversed only for an abuse of discretion or misapprehension of the law. *Sulmeyer v. Coca Cola Co.,* 515 F.2d 835 (5th Cir.), *cert. denied,* 424 U.S. 934, 96 S.Ct.

1148, 47 L.Ed.2d 341 (1976). Great latitude in the trial court's authority is especially appropriate when the motion cites some pernicious error in the conduct of the trial. Then the trial court occupies the best vantage from which to estimate the prejudicial impact of the error on the jury. *O'Neil v. W. R. Grace & Co.,* 410 F.2d 908, 914 (5th Cir. 1969).

■ Unfortunately, the record in this case does not clearly reveal what error in the instructions to the jury was so troubling to the district court. Neither party objected to the instruction. Of course, the failure of a party to object to an instruction does not preclude the court from granting a new trial if the court finds that the erroneous instruction may have resulted in a miscarriage of justice. *North Texas Producers Assoc. v. Metzger Dairies, Inc.,* 348 F.2d 189 (5th Cir.), *cert. denied,* 382 U.S. 977, 86 S.Ct. 545, 15 L.Ed.2d 468 (1966); *Dowell, Inc. v. Jowers,* 166 F.2d 214 (5th Cir.), *cert. denied,* 334 U.S. 832, 68 S.Ct. 1346, 92 L.Ed. 1759 (1948). In the present case, however, the district court seems to have had only a vague doubt about the ability of the jury to understand comparative fault, and a regret that he had not submitted interrogatories to discover the basis of the jury's verdict.

■ The failure of the district court to submit interrogatories to the jury could not, in itself, amount to an error giving cause for a new trial. While interrogatories might be desirable in a jury trial involving an issue of comparative negligence, the submission of interrogatories is purely a matter of trial court discretion. *Miskell v. Southern Food Co.,* 439 F.2d 790 (5th Cir. 1971). Reliance on the general form of verdict in such a simple case as this only restricts the court's knowledge of the jury's findings, and is not an error likely to cause prejudice.

■ It appears that the district court's central concern, however, was that the verdict was against the great weight of evidence. As we have said, the granting of a new trial, whether because of procedural error or great weight of evidence, lies within the district court's discretionary authori-

ty. But where the district court chooses to grant a new trial and bases its decision on the weight of the evidence, we must review the record carefully to make certain that the district court has not merely substituted its own judgment for that of the jury. *Love v. Sessions*, 568 F.2d 357 (5th Cir. 1978). It is for the jury to decide where the preponderance of the evidence lies. A new trial may be granted only if the jury's verdict is against the great weight of the evidence. *Conway v. Chemical Leaman Tank Lines, Inc.*, 610 F.2d 360 (5th Cir. 1980); *Spurlin v. General Motors Corp.*, 528 F.2d 612 (5th Cir. 1976).

■ However, we need not decide whether the verdict in this case was against the great weight of the evidence, since our own review of the record has revealed a fundamental error in the district court's instructions to the jury. Under Texas law, the plaintiff is entitled to a verdict if the parties are equally at fault. *Leyva v. Smith*, 557 S.W.2d 169 (Tex.Civ.App.1977). The district court's instruction on comparative negligence was as follows:

> If you find that both the Defendant was negligent as contended by the Plaintiff in some particular, and such negligence was a proximate cause, then you also find that the Plaintiff was negligent and that her negligence was a proximate cause, then it would be necessary for you to decide the percentage of fault of the contributory negligence chargeable to the Plaintiff as compared to the amount of fault or negligence on the part of the Defendant.
>
> In other words, contributory negligence on the part of the Plaintiff is not a complete bar unless you should find that the contributory negligence is more than fifty per cent. If you should find that the Plaintiff was more than fifty per cent negligent, then you would find for the Defendant. But if you find that she is less than fifty per cent negligent, then you would determine the amount of damages, and you would reduce the amount of damages by the percentage of negligence which you attributed to the Plaintiff.

Nowhere in the court's instruction was the possibility or consequence of a finding of equal fault explained to the jury. Indeed, the last sentence of the instruction on comparative negligence wrongly suggested that the plaintiff could not recover if found to be equally at fault.

■ Though counsel for the plaintiff has never objected to the instruction on this particular ground, we find the error to be serious enough to warrant our consideration. Whenever the record of a case on appeal discloses plain error requiring corrective action in order to prevent a miscarriage of justice, this court may *sua sponte* reveal the error and decide the case accordingly. *Sheppard Federal Credit Union v. Palmer*, 408 F.2d 1369 (5th Cir. 1969). There is fundamental error in instructions which mislead the jury or leave the jury to speculate as to an essential point of law. *Frederic P. Wiedersum Associates v. National Homes Const. Corp.*, 540 F.2d 62 (2d Cir. 1976); *Sheppard Federal Credit Union v. Palmer, supra; McNello v. John B. Kelly, Inc.*, 283 F.2d 96 (3d Cir. 1960).

We hold, therefore, that the district court properly, though for the wrong reason, granted the plaintiff's motion for a new trial.

■ At the second trial of this case the error committed in the first trial was repeated, and we would be compelled to return the case for yet another trial but for the results of the written interrogatories submitted to the second jury. Asked what percentage of fault was attributable to the respective parties, the jury found RCI 95 percent at fault and Cruthirds 5 percent at fault. Thus, the jury was so far from a verdict of equal fault that the failure of the district court to instruct them properly on equal fault was harmless. *See Bass v. Dehner*, 103 F.2d 28, 35 (10th Cir.), *cert. denied*, 308 U.S. 580, 60 S.Ct. 100, 84 L.Ed. 486 (1939). Moreover, since the Texas rule for equal fault favors the plaintiff by allowing a reduced recovery, the effect of the court's failure to instruct the jury on this point

could have prejudiced the jury's deliberations against RCI only in the amount of damages awarded, and then only by the very slightest degree.

We have considered the contentions of RCI that other prejudicial errors were committed in the instructions to the jury in the second trial, and we find them to be without merit. The judgment of the district court is

AFFIRMED.