**Petition for Writ of Mandamus Conditionally Granted and Majority and Dissenting Opinions filed December 23, 2014.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00275-CV

### IN RE WYATT FIELD SERVICE COMPANY, Relator

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**125th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2011-44838**

# D I S S E N T I N G   O P I N I O N

The Majority concludes that the unintended consequence of *In re Columbia* and its progeny, including *In re Toyota*, is that an appellate court must apply a factual-sufficiency review of the trial court's factual insufficiency decision— viewing the evidence in the light most favorable to the jury findings. Applying that mandamus factual-sufficiency standard equals reversal, as a matter of law, in every case. Thus, the consequence of the Majority's opinion, intended or

unintended, is that a trial court may not grant a motion for new trial on factual insufficiency. Because I disagree that a traditional factual sufficiency standard applies to the mandamus review of the trial court's grant of new trial, I respectfully dissent.

## I.    INTRODUCTION

Our system of justice demands that we show respect for both the role of the jury to determine disputed questions of fact and the role of the trial judge to apply the law to those fact findings and to ensure that all parties *received* a fair trial. A trial judge may not substitute its judgment for the jury on factual disputes following a trial any more than a trial judge may resolve genuine issues of material fact on summary judgment. However, as part of the trial court's oversight role, the trial judge may grant a motion for new trial on factual insufficiency, subject to a merits-based mandamus review of that decision by the court of appeals.

As a question of first impression in this court, the Majority decides the standard by which this court of appeals performs such a merits-based mandamus review. Instead of the traditional mandamus standard, abuse of discretion, the Majority adopts a factual-sufficiency review, not only affording no discretion to the trial court's decision but also affording full deference to the jury's presumed determination of credibility. The Texas Supreme Court has not articulated the standard we should apply; however, in repeatedly reaffirming the discretion of the trial court to grant new trials, the Texas Supreme Court has implicitly rejected the standard we adopt today. Further, the Texas Supreme Court placed strictures on the trial court's discretion while explicitly referencing the successful Fifth Circuit approach as a model. Therefore, I suggest that we adopt the Fifth Circuit standard

2

for reviewing such orders because it is a standard that is structured to afford deference to *both* the jury's verdict and the trial court's necessary oversight. Using that standard, I would deny the petition for writ of mandamus.

I agree with the Majority that:

1.      Under the abuse-of-discretion mandamus standard, we defer to the trial court's factual determinations if they are supported by the evidence, but we review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding).

2.      A trial court's discretion to grant a motion for new trial is not limitless and is abused in particular by ordering a new trial based solely on "in the interest of justice." *See In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 210, 213 (Tex. 2009) (orig. proceeding) (holding "that discretion is not limitless").

3.      To the extent that this new trial order rests solely upon "the interests of justice," it is an abuse of discretion. *See In re Wyatt Field Serv. Co.*, No. 14-13-00811-CV, 2013 WL 6506749, at *3 (Tex. App.—Houston [14th Dist.] Dec. 10, 2013, orig. proceeding) (mem. op.).

4.      The reviewing court must ensure that an order granting a new trial is based upon a reason or reasons (1) for which a new trial is legally appropriate, and (2) specific enough to indicate that the trial court did not simply parrot a pro forma template, but rather derived the articulated reasons from the particular facts and circumstances of the case at hand. *See In re United Scaffolding, Inc.*, 377 S.W.3d 685, 688–89. (Tex. 2012) (orig. proceeding).

5.     The new trial order in this case facially complies with the requirements of *In re United Scaffolding, Inc*.

6.     An appellate court "may conduct a merits-based review of the reasons given for granting a new trial" to determine whether the record supports the articulated reason(s).  *See In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d 746, 761–62 (Tex. 2013) (orig. proceeding).

7.     Although the Texas Supreme Court does not articulate when an appellate court "must" conduct a merits-based review of the new trial order, we should do so in this case because we cannot otherwise give any scrutiny to the particular reasons articulated for granting the new trial in this case.

8.     The Texas Supreme Court has not prescribed an appropriate standard for this court to use in conducting the merits-based review.

I disagree, however, that a factual-sufficiency standard is the proper standard of review to apply in a petition for writ of mandamus, merits-based review of reasons for granting a motion for new trial.  Therefore, under what I urge is a more appropriate, deferential standard of review, I also disagree that the trial court abused its discretion in granting Real Parties' motion for new trial.

## II.     REVIEW OF ORDERS GRANTING NEW TRIAL AFTER IN RE TOYOTA

The Majority faithfully traces the Texas Supreme Court's five-year path toward eliminating the unfettered discretion trial courts long held to grant new trials.  The path culminated in the *In re Toyota* pronouncement that an appellate court "may conduct a merits review of the bases for a new trial order." *Id.* at 749. Stated differently, an appellate court may peek behind the order granting new trial

4

to determine whether the record supports the trial court's rationale. *Id.* I join issue with the Majority's description of the *In re Toyota* merits-based review as one to evaluate "the correctness of a new trial order setting aside a jury verdict." Ante at 5. Instead, the *In re Toyota* Court authorized the appellate court to review the record to evaluate "the correctness or validity of the orders' articulated reasons." 407 S.W.3d at 758. *In re Toyota* does not direct the appellate court to use the record to decide whether the trial court made the right decision. *In re Toyota* directs the appellate court to use the record to decide whether the trial court made its decision for the right reason.

The difference in these two types of review is subtle but material, and it turns completely upon the light in which the appellate court views the record. The traditional factual sufficiency review adopted by the Majority weighs all of the evidence, viewing it in the light most favorable to the jury findings. Ante at 8 (citing *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003)). The trial court's presence during the trial becomes irrelevant because the appellate standard gives no consideration to the trial judge's participation in the trial. On the other hand, a record review that assesses the correctness of the reasons provided acknowledges both the vital oversight role of the trial judge and the limitations on the exercise of that oversight power.

The difficulty in crafting a standard of mandamus review of orders granting new trial on factual insufficiency is the tension between the judge and jury. We need not and may not pick one over the other. The Texas Supreme Court requires that we review the grant of a new trial order under a standard the gives respect to the jury *and* the trial court. *See In re Columbia*, 290 S.W.3d at 212 ("We do not

5

retreat from the position that trial courts have significant discretion in granting new trials."); *accord In re United Scaffolding*, 377 S.W.3d at 687 (having "reiterated the considerable discretion afforded trial judges in ordering new trials," the court clarifies that the standard of review "must both afford jury verdicts appropriate regard and respect trial court's significant discretion in these matters").

Neither do we write on a completely clean slate for an appropriate standard of review. Although a merits review of an order granting new trial is completely new to Texas practice, it is, as acknowledged by the *In re Toyota* Court, "old hat to our colleagues on the federal bench." 407 S.W.3d 758. The *In re Toyota* Court examined the Fifth Circuit approach to reviewing orders granting new trial for factual insufficiency. Though not binding precedent, the Fifth Circuit approach quelled the Court's policy concerns because it is a system for merits-based review that is established and successful in achieving respect for both jury and judge.

Following the *In re Toyota* Court's nudge in the right direction, Real Parties here urge this court to conduct its merits-based review on an abuse-of-discretion standard following the Fifth Circuit. Wyatt, however, urges this court to adopt a factual-sufficiency standard for reviewing the trial court's order granting a new trial for insufficient evidence. The Majority chooses the Wyatt approach, concluding that Real Parties' position affords this court "no ability to review new trial orders based on factual sufficiency" to ensure that the trial court has not substituted its judgment for that of the jury. Ante at 10. I heartily disagree with this conclusion.

The Texas Supreme Court has, as outlined above, specifically pointed to the Fifth Circuit model as one that achieves a proper balance between respect for both

jury verdicts and judicial discretion.  *In re Toyota*, 407 S.W.3d at 759 (referring to *Cruthirds v. RCI, Inc. d/b/a Red Carpet Inn of Beaumont, Tex.*, 624 F.2d 632, 635–36 (5th Cir. 1980), as a decision in which the Fifth Circuit "'review[ed] the record carefully to make certain that the district court [did] not merely substitute[ ] its own judgment for that of the jury' when that court 'disregard[ed] the verdict and grant[ed] a new trial'" (alterations in original)).  The order granting new trial in *Cruthirds*, like the order in this case, rested in part upon the trial court's conclusion that the verdict was against the great weight of evidence.  624 F.2d at 635.  That the Texas Supreme Court found guidance in the decades-old Fifth Circuit model for reviewing new trial orders should give comfort in selecting that model for undertaking a review that gives respect to both the jury system and the judicial oversight of that system.

Federal Rule of Civil Procedure 59 grants a federal trial court "historic power to grant a new trial based on its appraisal of the fairness of the trial and the reliability of the jury's verdict."  *Smith v. Transworld Drilling Co.*, 773 F.2d 610 612–13 (5th Cir. 1985).  One of the grounds permissible for the exercise of that power is that the verdict is against the great weight of the evidence.  *Id.*  The trial judge must weigh all of the evidence, but it need not consider such evidence in the light most favorable to the nonmoving party.  *Laxton v. Gap Inc.*, 333 F.3d 572, 586 (5th Cir. 2003).

Federal courts and commentators view the trial court's oversight role pursuant to Rule 59 "'as an integral part of trial by jury.'"  *Transworld Drilling*, 773 F.2d at 613 (quoting C. Wright, *Federal Courts* 633 (4th ed. 1983)).  On the other hand, federal courts of appeal "exercise 'particularly close scrutiny' over a

7

district court's grant of a new trial on evidentiary grounds in order 'to protect the litigants' right to a jury trial.'" *Cooper v. Morales*, 535 Fed. App'x 425, 431 (5th Cir. 2013) (quoting *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982)).

The *Cruthirds* decision, relied upon by the *In re Toyota* Court, urged that "[g]reat latitude in the trial court's authority is especially appropriate when the motion cites some pernicious error in the conduct of the trial. Then the trial court occupies the best vantage from which to estimate the prejudicial impact of the error on the jury." *Cruthirds*, 624 F.2d at 635. Shortly thereafter, the Fifth Circuit adopted three factors, including the "pernicious error" of *Cruthirds*, to strike a delicate balance between judge and jury: (1) the simplicity of the issues, (2) the extent to which the evidence is in dispute, and (3) the absence of any pernicious or undesirable occurrence at trial. *Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir. 1982). "When these three factors are not present it is more appropriate to affirm the district court's decision, recognizing its first-hand knowledge of the course of the trial." *Carbo Ceramics, Inc. v. Keefe*, 166 Fed. App'x 714, 717 (5th Cir. 2006). Stated differently, where the issues are relatively simple, the evidence is disputed but not hotly contested, and the trial did not involve prejudicial influences or improper trial tactics, then deference to the jury over the trial judge is more appropriate. *See id.*

Using this scope and standard of review, the decision of the federal trial court to grant a new trial for factual insufficiency or against the great weight of the

evidence[1] is upheld if any of the *Shows* factors is present or applicable. *Id.* Of note, however, the *Shows* factors guide the review of an order *granting* a new trial; federal appellate courts accord far more deference to the trial court's decision to *deny* a new trial than to a decision to *grant* a new trial. *Brady v. Fort Bend Cty.*, 145 F.3d 691, 713 (5th Cir. 1998). Such a shift in deference makes perfect sense because when the trial court denies a new trial there is no tension between judge and jury. But upon grant of a new trial, the *Shows* factors assist in determining whether circumstances exist that warrant deference to the trial court over the jury.

### III. REVIEW OF THE NEW TRIAL ORDER

A merits-based review of the trial court's reasons for granting new trial in this case reveals the reasons to be correct. Application of the *Shows* factors favors deference to the trial court. The new trial order should be upheld.

### A. The trial court's articulated reasons are confirmed correct on neutral record-evidence review.

The trial court granted Real Parties' motion for new trial on two bases:[2] (1) the jury's answer to Question No. 1(a) was contrary to the overwhelming weight of

---

[1] The "great weight" standard is contrasted in federal authority with the lesser, "greater weight" standard that would permit the trial court to substitute its judgment and grant a new trial where it concludes the evidence is merely insufficient. *See Spurlin v. General Motors Corp.*, 528 F.2d 612, 620 (5th Cir. 1976). The "great weight" standard for a motion for new trial is, however, a lower standard than the exacting standard for a directed verdict or judgment n.o.v. because those motions present a question of law and result in a final judgment. *See Shows*, 671 F.2d at 930 (citing *U.S. for Use and Benefit of Weyerhaeuser Co. v. Bucon Const. Co.*, 430 F.2d 420, 423 (5th Cir. 1970)).

[2] I quibble somewhat with the Majority's analysis of the jury's no-negligence response on ExxonMobil as a basis for the new trial. The jury's answer to Question No. 4 about ExxonMobil was not mentioned in the order granting new trial, but it was mentioned in the trial court's findings. I think the distinction is significant, as outlined below, because I believe the trial court's reference to the ExxonMobil finding is intended as factual support for the trial court's ultimate conclusion that the jury's answer to Question No. 1 about Wyatt was against the great weight and preponderance of the evidence. ExxonMobil was a settling party and is, therefore, not a party to this appeal. As such, I cannot see that

9

the evidence; and (2) Wyatt and its witnesses regularly injected evidence of collateral sources, which tainted the verdict. I examine the factual or quasi-factual findings made by the trial court either in its order granting new trial or in its findings of fact and conclusions of law to determine which, if any, of these findings is unsupported in the record such that the trial court's new trial order should be reversed.

### 1. Was the safety chain installed in an incorrect location?

The trial court makes the following factual determination: The "great weight and overwhelming preponderance of the evidence showed that the safety chain at issue in this case was installed in an incorrect location." The Majority states that "Wyatt did not dispute at trial that the safety chain was installed in an incorrect location, the condition was unreasonably dangerous, or that real parties were not warned of the incorrect installation." Ante at 18. Thus, we agree that this factual determination is supported by the record.

### 2. Did Wyatt install the safety chain in 2008 and did the safety chain move between 2008 and 2011?

The trial court makes the following factual determination: The "great weight and overwhelming preponderance evidence [sic] introduced at trial confirmed that Defendant Wyatt Field Services Company installed the safety chain in 2008 and that the chain remained in the same location until July 3, 2011."

The Majority accurately details the testimony of former ExxonMobil employee Merryman, plaintiff's expert Howell, Wyatt's expert Elveston, and

the jury's answer to Question No. 4 would provide an independent basis for granting Real Parties a new trial against Wyatt.

10

Wyatt's representative Jordan. None testified that Wyatt did not install the chain. All affirmative evidence was that Wyatt installed the chain. Wyatt's own expert testified that it was "more likely" that Wyatt installed it. The parties joined issue on this point solely by virtue of the Wyatt testimony that Wyatt could not locate any documents to confirm that Wyatt installed it.

All evidence regarding movement of the chain is circumstantial evidence by negative omission. There is no evidence that the chain moved. To move the chain, a work order was required. None of the work orders in evidence show the chain moved. Wyatt has no documentation that the chain moved from 2008 to 2011.

Thus, although there was arguably a fact question on whether Wyatt installed the chain or whether the chain moved between 2008 and 2011, the trial court's factual determination is supported by the record.

### 3. *Were the Plaintiffs / Real Parties warned?*

The trial court makes the following factual determination: The "great weight and overwhelming preponderance of the evidence introduced at trial confirmed that Plaintiffs were never warned that the safety chain was incorrectly installed and had no reason to be aware of the danger." The Majority states that "Wyatt did not dispute at trial that . . . real parties were not warned of the incorrect installation." Ante at 18. Thus, we agree that this factual determination is supported by the record.

### 4. *Did Wyatt repeatedly violate the trial court's orders in limine?*

The trial court makes the following factual determination: The "Defendant and its witnesses regularly injected evidence of collateral sources into the case in

violation of the Court's order granting Plaintiff's motion in limine on this topic." The trial court also stated, in its findings, that Wyatt repeatedly violated the Court's limine orders, ignored the Court's admonishments, and injected inadmissible information into the case.

Neither Wyatt nor the Majority evaluates the record in this regard at all. Wyatt does not suggest the record does not support this finding. The Majority likewise does not suggest that the record does not support this finding. Instead, Wyatt argues solely that the trial court erred because defense counsel's alleged violation of the court's order "had no effect on whether the jury placed any liability on Defendant Wyatt." Led to the analysis by Wyatt, the Majority examines the trial court's factual statements purely from the standpoint of harm, not support. Ultimately, the Majority determines that "Wyatt's violation of the trial court's limine order could not have affected the jury's finding that Wyatt was not negligent, and any violation was harmless." Ante. at 31.

At the outset, I disagree that a harm analysis has anything to do with our review of the trial court's order granting a new trial. If Wyatt's violation of a motion in limine could not provide a basis for a new trial because, as the Majority concludes, limine orders are preliminary and violations of them are curable and waivable, then the Supreme Court would not have needed to perform a merits-based review of the record in *In re Toyota*. There, as here, the trial court's grounds for granting a new trial included Toyota's violation of an order in limine. 407 S.W.3d at 754–55. The Supreme Court stated that this reason, "(if accurate) would have been 'legally appropriate' grounds for new trial." *Id.* at 760. However, the Supreme Court's merits-based review of the record revealed that Toyota did not

violate the trial court's rulings. *Id.* at 761. Therefore, the record did not support that ground. "Support" is our inquiry; not harm.

Therefore, as Wyatt's sole allegation is that its conduct "did no harm," Wyatt fails to support its petition with any argument that it did comply with the trial court's limine orders or an argument that a merits-based review shows that Wyatt did not violate the trial court's limine orders. Nevertheless, a review of the record does support the trial court's factual statement. On the very last day of testimony in this three-week trial, the following exchange occurred outside the presence of the jury:

> THE COURT: At this time I would like to address the witness in this matter. This is the second time that you have injected a matter involving collateral source in the testimony here today.
>
> . . .
>
> THE COURT: I am instructing you at this time not to mention anything about government assistance or any other collateral source for compensation available through any kind of charity or any kind of, like I said, government program for these gentlemen. If you violate this Court's instruction, I will hold you in contempt.
>
> . . .
>
> THE COURT: I want to ask the witness real quickly, did you have a conversation with these attorneys about the motions in limine that were granted by the Court in this case?
>
> THE WITNESS: No.

Wyatt's counsel acknowledged failing to instruct the witness on the limine orders. The court's response to Wyatt's acknowledgement is striking:

> There's a right and wrong way to do this. Everybody has done this enough times to know how to question and examine a witness so

13

as not to violate motions in limine and the orders of the Court. Moreover, the witnesses themselves know. I have witnesses that this isn't their first time in court. These are professional witnesses. It's amazing to the Court that people that know the rules that have done this so many times can stand up and plead ignorance and say, I'm sorry, I'm surprised by this happening and that happening.

You have represented to the Court a number of times that you have gone back and spoken to certain witnesses [sic] and the first time I ask a witness whether or not you have done that he says no. I want to believe you but at the same time I have been told this now several times and you say something and then you proceed to do the opposite. So I'm afraid I can't continue to believe you.

Wyatt's counsel attempted to deflect the court's ire by suggesting that the Plaintiffs had "talked about records that you won't let in, too; so, I mean, you are not directing that directly at me, are you?" The trial court responded,

I am saying that's got to stop. At this point, yes, I am directing that towards you. I don't have the same issue and nothing has been brought up like it has continually with respect to anybody else's conduct . . . ."

The foregoing exchange makes plain that this is neither a case, like *In re Toyota*, where the "record squarely conflicts with the trial judge's expressed reasons for granting a new trial,"[3] nor is it a case where the trial court, knowing the outcome of the case, has generated a set of facts not evident from the record. Instead, the record fully supports the statement that Wyatt repeatedly violated limine orders and that even before the jury returned its verdict, the trial court was concerned about Wyatt's conduct and the impact it was having on the trial.

---

[3] 407 S.W.3d at 759.

14

**5.      Was there any evidence of ExxonMobil's actual knowledge of the danger of the dummy nozzle system?**

The trial court makes the following factual determination:   "The jury's finding that ExxonMobil had actual knowledge of any unreasonable risk of harm/condition is not supported by factually sufficient evidence."

In its petition, Wyatt *stipulates* that the record contains no direct evidence that ExxonMobil had any actual knowledge of any unreasonable risk of harm or the condition of the improperly installed safety chain.   Wyatt points to no circumstantial evidence of actual knowledge.   Moreover, Wyatt's two-paragraph discussion of this finding does not dispute the trial court's finding.   Instead, Wyatt urges that the jury's finding (Question No. 4) that ExxonMobil had actual knowledge is rendered moot by the answers to other questions.   Similarly, the Majority sidesteps a merits-based review of the record to determine whether the trial court's finding is supported and instead concludes that "the jury's no-liability finding in favor of Wyatt renders any liability finding against ExxonMobil immaterial."   Ante at 25.   I again urge that this legal analysis, akin to alleged charge error on traditional appeal from a judgment on jury verdict, is askew of the analysis we are to perform.

The trial judge did not grant a new trial to Real Parties against Wyatt because the jury did or did not have evidence of ExxonMobil's actual knowledge. Finding of fact number 5 makes clear that the trial judge granted a new trial to Real Parties against Wyatt because the jury's answers to several questions, viewed together and in light of the evidence, caused the trial judge to conclude that "the jury failed to follow the Court's instructions and simply decided to place all

15

responsibility on ExxonMobil without regard to the legal standards set forth in the Court's charge." Whether the ExxonMobil finding is moot or immaterial for purposes of entry of judgment does not speak to whether the trial judge's factual statement about the evidence of actual knowledge has support in the record.

A merits-based review of the record confirms that (1) there is no direct evidence that ExxonMobil had actual knowledge, and (2) there is no circumstantial evidence from which a proper inference of actual knowledge could be indulged. The trial court's factual determination that there is insufficient evidence to support the jury's answer to Question No. 4 about ExxonMobil's actual knowledge is supported by the record and by Wyatt's stipulation.

**B.      The trial court's unchallenged finding of pernicious or undesirable conduct by Wyatt, when evaluated under the Fifth Circuit model, requires deference to the trial court's new trial order.**

Having concluded that the record supports the factual statements made by the trial court in granting the new trial, I turn to the *Shows* factors from the Fifth Circuit model. If any one of them is present, as outlined above, deference should be accorded the trial judge's decision to grant a new trial. *Shows*, 671 F.2d at 930.

### 1.      *The simplicity of the issues.*

My review of Fifth Circuit authority suggests that few if any cases have failed to meet this factor. *See, e.g.*, *Ellerbrook v. City of Lubbock, Tex.*, 465 Fed. App'x 324, 336–37 (finding factor one inapplicable because a Title VII retaliation claim presents a relatively simple issue). If retaliation is simple, negligence as the principal issue is also simple. Because the issues are not complex, factor one is not present and suggests deference to the jury.

16

## 2.	*The extent to which the evidence is in dispute.*

Notwithstanding that the underlying trial lasted several weeks, the actual disputes between the parties or in the evidence were few.  Most of the evidence in the case was admitted without objection.  The parties hotly contested the legal theory by which the Real Parties' case needed to be submitted and how to treat ExxonMobil under Chapter 33.  But the parties narrowed their disputes to a very few, as is reflected by the Majority's presentation of the evidence, rendering more evidence undisputed than disputed.  *See, e.g.*, *Carbo Ceramics, Inc.*, 166 Fed. App'x at 717 (finding factor two inapplicable because, "although the evidence is this case was disputed, there were numerous areas of agreement between the parties").  Because the evidence is not hotly disputed, factor two is not present and suggests deference to the jury.

## 3.	*The absence of any pernicious or undesirable occurrence at trial.*

Factor three is present at a high degree and this *Shows* factor therefore tips the ultimate analysis in favor of deference to the trial court.  Specifically, as the foregoing discussion of limine order violations reveals, the record supports the trial judge's statement that Wyatt engaged in a pattern of disregarding limine orders.  Wyatt's counsel refused to admonish witnesses on excluded evidence and, in the view of the trial court, did so while deliberately misleading the court with reassurances that limine orders had been communicated to witnesses.  Wyatt's counsel displayed inadmissible evidence to the jury—evidence that the judge and jury saw but which this appellate court cannot.

In addition to these referenced exchanges previously excerpted, the trial judge admonished the lawyers again just before closing argument.  Giving a

specific example once again, the judge highlighted that Wyatt's counsel assured the court that a document had been redacted before showing it to the jury, but when the document appeared on the screen, it was not and therefore "flashed up there to let everybody know there was another defendant in the case." The court stated: "I don't trust the parties in the matter to do [redactions] on their own," and based upon the parties' three-week track record for not getting redactions accomplished and showing the jury information that was not admitted, "if [during closing argument] something is put up that's violative of the court order or is not reflective of what the record shows as the agreements of counsel with respect to evidence in this case, I am going to sanction you."

Though, as outlined above, a merits-based review fully supports the "correctness" of the trial court's finding that pernicious and undesirable conduct occurred, no merits-based review could speak to the impact such conduct actually had on the trial, the jury, and the jury's resolution of the issues. However, the trial court, having observed three weeks of trial, believed that conduct infected this jury trial and deprived Real Parties of a fair trial. There is no appellate methodology for evaluating whether the trial court was correct about that conclusion and neither Texas authority nor federal authority suggests that the appellate court should try. This is the definition of discretion.

Because factor three is present, *Shows* requires deference to the trial court's decision to grant a new trial.

**C.** **The Majority's factual-sufficiency deference to implied jury findings eliminates all trial-court discretion.**

The Majority defers entirely to the jury and thereby disagrees with the trial court's "great weight and overwhelming preponderance of the evidence" determination. For example, the Majority states: "The jury could have found Jordan's testimony that he found nothing in Wyatt's files to confirm that Wyatt had done the work was more credible than the testimony based on a single computer entry showing that Wyatt had done the work." Ante at 23.

Second, as the Majority's analysis illustrates, using the factual-sufficiency standard and performing a harm analysis has the effect of asking whether the trial court committed reversible error instead of asking what I urge is the correct question: Is there support in the record for the trial court's factual statement?

## IV. Conclusion

The Majority performs a factual-sufficiency review, applying all permissible inferences and deferring to all credibility determinations that we presume flow in support of the jury's answers, and then overlays a harm analysis. As such, the Majority has applied precisely the standard that we would have applied had the trial court never made its new-trial decision and, instead, the losing party had challenged the factual sufficiency of the evidence by regular appeal. For purposes of a motion for new trial, we have rendered the trial court irrelevant. Because the trial court's stated reasons are "correct" on this record and because the trial court was in the best position to determine whether Wyatt's pernicious conduct in violating limine orders operated to prejudice the jury and deprive Real Parties of a

19

fair trial, I would hold that the trial court did not abuse its limited discretion. Because the Majority holds otherwise, I respectfully dissent.

/s/    Sharon McCally
Justice

Panel consists of Justices Christopher, Jamison, and McCally. (Jamison, J., majority).